SHERWIN H. RAYMOND vs. BOARD OF REGISTRATION
IN MEDICINE

Suffolk.   May 4, 1982. — December 8, 1982.

Present: HENNESSEY, C.J., WILKINS, LYNCH, & O'CONNOR, JJ.

*Physicians and Surgeons.   Board of Registration in Medicine.   Administrative Law*, Proceedings before agency.   *Due Process of Law*, Revocation of license to practice medicine.

The amendment of G. L. c. 112, § 5, by St. 1977, c. 165, permitting the Board of Registration in Medicine to revoke the license of a physician who has been convicted of a crime which "calls into question his ability to practice medicine" did not invalidate a regulation of the board making conviction of any crime a basis for discipline.   [710-712]

The Board of Registration in Medicine was warranted in concluding that a physician's conviction of knowing possession of two unregistered automatic submachine guns reasonably called into question his ability to practice medicine.   [712]

The Board of Registration in Medicine had authority to revoke the license of a physician convicted of knowing possession of two unregistered automatic submachine guns on the grounds that the physician lacked good moral character and that his conduct undermined the confidence of the public in the integrity of the medical profession, without formal promulgation of rules specifying such grounds for discipline.   [712-713]

Combination of certain investigative and adjudicative functions performed by the Board of Registration in Medicine in disciplinary proceedings against a physician did not violate the physician's constitutional right to due process of law or his right to a "full and fair hearing" under the State Administrative Procedure Act, G. L. c. 30A, § 10.   [714-717]

Certain statements made by an individual, who was then the secretary and a member of the Board of Registration in Medicine, did not rise to a level demonstrating an unacceptable risk of unfairness in disciplinary proceedings against a physician.   [717]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on August 12, 1981.

The case was reported by *Liacos*, J.

*David Burres* for the plaintiff.

*Ellen L. Janos,* Assistant Attorney General (*Leah S. Crothers,* Assistant Attorney General, with her) for the defendant.

O'CONNOR, J. Raymond petitioned a single justice of this court for review of an order of the Board of Registration in Medicine, revoking his certificate of registration (license) to practice medicine. The single justice reserved and reported the following questions:

"1. Whether the Board of Registration in Medicine (board) had the right to revoke the plaintiff's license to practice medicine for conviction of a crime unrelated to the practice of medicine, in view of the 1977 amendment to the General Laws, as set forth in G. L. c. 112, § 5 (g), authorizing disciplinary proceedings against a physician who 'has been convicted of a criminal offense which reasonably calls into question his ability to practice medicine.'

"2. Whether the board's revocation of the plaintiff's license to practice medicine unconstitutionally deprives him of liberty and property without due process of law.

"3. Whether the board's procedures were unlawful, in so far as members of the board, including the hearing officer designated by the board to preside over the disciplinary proceedings, brought charges against the plaintiff and thereafter sat in judgment to determine the validity of these charges.

"4. Whether the board's decision is supported by substantial evidence and warranted by the facts.

"5. Whether the board's decision is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law."

We answer each question favorably to the board.

The board commenced an adjudicatory proceeding against Raymond by serving upon him an order to show cause.[1]

---

[1] Section 1.01.(2) of the rules of procedure governing the board's disciplinary proceedings defines an "order to show cause" as "a paper served by the Board upon a registrant ordering the person to appear before the Board for an adjudicatory proceeding." 243 Code Mass. Regs. § 1.01(2) (1979).

The order to show cause, as subsequently amended, alleged in material part: (1) that Raymond had sold under "clandestine circumstances" two automatic submachine guns and four pistols on or about May 4, 1974, in North Bergen, New Jersey; (2) that Raymond had transferred, in violation of 26 U.S.C. § 5861 (e) (1976), and sold, under "clandestine circumstances," five unregistered pistols on or about May 15, 1974, in Newark, New Jersey; and (3) that Raymond had been convicted on June 25, 1975, in the United States District Court, District of New Jersey, of knowing possession of two unregistered automatic submachine guns, each equipped with a silencer, in violation of 26 U.S.C. § 5861 (d) (1976).

The board assigned the case to a hearing officer, who conducted an evidentiary hearing. The hearing officer found that the allegations set forth in the order to show cause were proved. There was ample support in the evidence for these findings, and Raymond does not challenge them. The hearing officer recommended to the board that Raymond's license be revoked on the ground that he was not of such "good moral character" as to warrant his continued practice of medicine in this Commonwealth. The board adopted the hearing officer's findings, and concluded that Raymond "ha[d] been convicted of a criminal offense and ha[d] engaged in other unlawful acts which reasonably call[ed] into question his ability to practice medicine." The board revoked Raymond's license on three separate grounds: (1) conviction of a crime; (2) lack of good moral character; and (3) conduct undermining the public's confidence in the integrity of the medical profession.

1. *The Board's Authority.*

General Laws c. 112, § 5, as amended through St. 1977, c. 165, provides that the board may revoke the certificate of registration of a physician upon proof that the physician "(g) has been convicted of a criminal offense which reasonably calls into question his ability to practice medicine." Section 5 further provides that "[t]he board shall, after proper notice and hearing, adopt rules and regulations governing the practice of medicine in order to promote the pub-

lic health, welfare, and safety and nothing in this section shall be construed to limit this general power of the board."[2] On June 28, 1976, pursuant to the authority vested in it by c. 112, § 5, the board promulgated a rule making conviction of any crime a basis for discipline. See Rules of Procedure Governing Disciplinary Proceedings, § 1.03 (5) (a) (7) (1979) ("A complaint against a physician . . . may be founded on . . . conviction of any crime").[3]

Raymond contends that § 5 (g), which was added to c. 112 by St. 1977, c. 165, invalidates the board's regulation which makes conviction of any crime a basis for discipline. He argues that the enactment of § 5 (g) demonstrates the legislative will that the board may discipline a physician for conviction of a crime only when the conviction reasonably calls into question the physician's ability to practice medicine. Raymond recognizes that in *Levy* v. *Board of Registration & Discipline in Medicine,* 378 Mass. 519, 526 (1979), we held, without consideration of § 5 (g), added by St. 1977, § 165, that the regulation in question was reasonably related to the legislative purpose of promoting the public health, welfare, and safety, and consequently was valid. The addition of § 5 (g) by St. 1977, § 165, did not demonstrate a change in legislative purpose. Its enactment served only to expand the list of reasons for discipline set out in § 5. The regulation continues to be reasonably related to the statutory purpose, and continues to be valid. The legislative will in this regard is made clear by the provision in c. 112, § 5, that "[t]he board shall . . . adopt rules and regulations governing the practice of medicine in order to promote the public health, welfare, and safety *and nothing*

---

[2] General Laws c. 112, § 5, was further amended in 1977, as well as 1980 and 1981. The amendments are irrelevant to the issues presented here. Raymond does not challenge the constitutionality of G. L. c. 112, § 5.

[3] The board's regulations governing disciplinary proceedings are currently codified at 243 Code Mass. Regs. § 1.00 et seq. (1979). They were previously printed, with different numeration, at Mass. Reg. issue No. 12, at 18-33 (1976). See *Arthurs* v. *Board of Registration in Medicine,* 383 Mass. 299, 301 n.1 (1981).

*in this section shall be construed to limit this general power of the board"* (emphasis added).

Raymond could be disciplined for his criminal conviction under c. 112, § 5, as well as under the board's regulations. Section 5 (g) provides that a physician is subject to discipline if he is convicted of a crime which reasonably calls into question his ability to practice medicine. The board correctly found that Raymond's conviction reasonably called into question his ability to practice medicine. To be sure, the conviction did not arise out of Raymond's medical practice. That is not essential however. The ability to practice medicine requires not only technical competence, but also the unswerving dedication to employ it to preserve life, restore health, and alleviate suffering. See *Levy* v. *Board of Registration & Discipline in Medicine, supra* at 527-528; *Lawrence* v. *Board of Registration in Medicine,* 239 Mass. 424, 428-429 (1921) ("Mere intellectual power and scientific achievement without uprightness of character may be more harmful than ignorance. Highly trained intelligence combined with disregard of the fundamental virtues is a menace"). It is difficult to conceive of an attitude more antithetical to a commitment to preserve life, alleviate suffering, and restore health, than the mentality demonstrated by knowing possession of unregistered automatic submachine guns. See *Cepulonis* v. *Commonwealth,* 384 Mass. 495, 497 (1981), appeal dismissed, 455 U.S. 931 (1982) (lack of substantial Federal question) ("The Legislature may well have inferred from common knowledge that the unlicensed possession of machine guns is almost always associated with the commission of violent crimes with the potential for mass killing"). Raymond's conviction unquestionably calls into question his ability to practice medicine.

The board's second and third grounds for revoking Raymond's license were that he lacked good moral character and that his conduct undermined the confidence of the public in the integrity of the medical profession. As we have noted, the board has authority to "adopt rules and regula-

tions governing the practice of medicine in order to promote the public health, welfare, and safety." G. L. c. 112, § 5. Lack of good moral character and conduct undermining the public's confidence in the integrity of the medical profession are not specifically included among the statutory or regulatory grounds for discipline.[4] The board, however, need not adopt its rules and regulations by formal rule making. Although formal promulgation may be the best practice,[5] the board may adopt policies by adjudication as well. *Arthurs* v. *Board of Registration in Medicine,* 383 Mass. 299, 312-313 (1981). The board did so here by announcing that lack of good moral character and conduct that undermines public confidence in the integrity of the medical profession are grounds for discipline.

Raymond contends that these are proper disciplinary grounds only if the offensive conduct occurs in the course of, or is "related to," the practice of medicine. This is the same argument that he advances against the board's authority to adopt a rule making conviction of any crime a basis for discipline, and it fails for the reason stated in our discussion of that issue. Disciplining physicians for lack of good moral character, and for conduct that undermines public confidence in the integrity of the profession, is reasonably related to promotion of the public health, welfare, and safety. A physician's bad moral character may reasonably call into question his ability to practice medicine. In addition, conduct such as Raymond's, some of which led to criminal conviction, undermines the public's confidence in the integrity of the medical profession. The board has the authority to protect the image of the profession. *Levy* v. *Board of Registration & Discipline in Medicine, supra* at 528, and its second and third grounds for revocation of Raymond's license are valid.

---

[4] Good moral character, however, is a requirement for the licensing of a physician. See G. L. c. 112, § 2.

[5] See Model State Administrative Procedure Act § 2-104 (4), 14 U.L.A. 53 (Supp. 1981), and Commissioners' Comment.

2. *Lawfulness of the Board's Procedure.*

Raymond argues that the board's procedures violated his constitutional right to due process, and his right to a "full and fair hearing," as required by the State Administrative Procedure Act, G. L. c. 30A, § 10. He contends that the combination of investigative and adjudicative functions performed by the board caused it to be a biased decision-maker. We disagree.

The board's rules, promulgated pursuant to its authority under G. L. c. 112, §§ 5 and 61, provide that complaints against physicians shall be reviewed by a complaint committee. 243 Code Mass. Regs. § 1.03(2) (1979). If, after the charged physician has had an opportunity to answer the complaint, 243 Code Mass. Regs. § 1.03(7) (1979), the committee determines that "there is reason to believe that the acts alleged occurred and constitute a violation for which a registrant may be sanctioned by the Board," the committee must forward the case to the board. 243 Code Mass. Regs. § 1.03(9) (1979).

The board must review each case forwarded to it by the complaint committee and must "require an adjudicatory hearing if it determines that there is reason to believe that acts alleged occurred and constitute a violation" for which a physician may be disciplined by the board. 243 Code Mass. Regs. § 1.03(10) (1979). At the adjudicatory hearing, the case against the physician "may be presented by a member of the Board or other person designated by the Board for this function." 243 Code Mass. Regs. § 1.04(4) (1979). The board may designate any board member to preside over any hearing held before it. 243 Code Mass. Regs. § 1.04(7) (1979). A final decision and order of the board requires the concurrence of at least four of its members. If the hearing officer is a member of the board, his vote counts in the event the board is not otherwise able to reach a final decision. 243 Code Mass. Regs. § 1.05(1) (1979).

Raymond complains that the member of the board who moved that the order to show cause be served upon him was thereafter appointed hearing officer and conducted the

hearing, that complaint counsel was employed by the board, and that before the hearing all the board members, including the hearing officer, had access to the investigatory materials collected in the Raymond complaint file. In addition, he appears to assert that one or more of the board members who participated in the decision to issue the order to show cause also participated in the ultimate decision to revoke his license. We shall assume that these assertions are correct.

Contentions similar to Raymond's were rejected by this court in *Dwyer* v. *Commissioner of Ins.,* 375 Mass. 227, 235 (1978). There, examiners employed by the Fraudulent Claims Board of the Division of Insurance challenged the procedure by which they were dismissed by the Commissioner of Insurance. The Commissioner had directed a deputy commissioner to conduct a study of the Fraudulent Claims Board. The deputy filed a lengthy report which concluded that the services performed by the Board did not justify maintaining it at its current level of personnel. *Id.* at 229. The Commissioner then notified fifty of the fifty-four bureau examiners that their employment was to terminate. However, he offered them the opportunity for hearings regarding their dismissal. The hearings were conducted by the Commissioner. The case presented to justify the dismissal consisted of the testimony and report of the deputy commissioner. After the hearings, the Commissioner rendered his opinions holding that the dismissals were justified. *Id.* at 230. The examiners challenged the procedure, alleging that the Commissioner was biased against them because of his role in prompting the investigation and because "he was evidently impressed by the report." *Id.* at 235. We said, *id.* at 235, that the examiners' contention was answered by these words from *Withrow* v. *Larkin,* 421 U.S. 35, 55 (1975): "No specific foundation has been presented for suspecting that the Board [the State examining board for physicians] had been prejudiced by its investigation or would be disabled from hearing and deciding on the basis of the evidence to be presented at the contested hearing. The mere

exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the Board members at a later adversary hearing. Without a showing to the contrary, state administrators 'are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.' *United States* v. *Morgan,* 313 U.S. 409, 421 (1941)."

In *Withrow* v. *Larkin, supra,* the United States Supreme Court considered a due process challenge to the procedures used by the Wisconsin Examining Board in suspending a physician's license. A United States District Court had granted a preliminary injunction preventing the board from conducting a disciplinary hearing. The District Court had concluded that "for the board temporarily to suspend Dr. Larkin's license at its own contested hearing on charges evolving from its own investigation would constitute a denial to him of his right to procedural due process." *Id.* at 42. The Supreme Court disagreed with the District Court's assessment that the board "did not qualify as an independent decisionmaker and could not properly rule with regard to the merits of the same charges it investigated," and held that the District Court had abused its discretion in issuing the preliminary injunction. *Id.* at 46. The Court noted that "[i]t is . . . very typical for the members of administrative agencies to receive the results of investigations, to approve the filing of charges or formal complaints instituting enforcement proceedings, and then to participate in the ensuing hearings . . . . The risk of bias or prejudgment in this sequence of functions has not been considered to be intolerably high or to raise a sufficiently great possibility that the adjudicators would be so psychologically wedded to their complaints that they would consciously or unconsciously avoid the appearance of having erred or changed position. Indeed, just as there is no logical inconsistency between a finding of probable cause and an acquittal in a criminal proceeding, there is no incompatability between [an] agency filing a complaint based on probable

cause and a subsequent decision, when all the evidence is in, that there has been no violation of the statute." *Id.* at 56-57. We are satisfied that the facts relied upon by Raymond do not demonstrate such a risk of prejudice or immutable adherence to a position unfavorable to him as to preclude a hearing that met the constitutional requirements of due process and the statutory requirements of fullness and fairness.

In addition to his claim that the board's procedures were unlawful because they impermissibly mixed investigative and adjudicative functions, a claim which we reject, Raymond contends that before the commencement of the hearing, an individual who then was the secretary and a member of the board opined in correspondence that the case against Raymond "could probably be settled without going to full hearing," and expressed a "feeling that this case is becoming unnecessarily complicated." Although the combination of investigative and adjudicative functions in the board did not, without more, deny Raymond his constitutional or statutory rights, special circumstances in a particular case may demonstrate an unacceptable risk of unfairness. *Withrow* v. *Larkin,* 421 U.S. at 58. The expressions of opinion on which Raymond relies, however, do not rise to that level. We also note that there is nothing in the record to show that, at the time of the board's decision, the author of the expressions of opinion was a member of the board or participated in its decision.[6]

We answer "Yes," to questions (1) and (4) reserved and reported by the single justice. We answer "No," to questions (2), (3), and (5). We remand the case to the single justice for further proceedings in accordance with this opinion.

*So ordered.*

---

[6] The board's brief asserts that the individual who expressed the opinions was not a member of the board when the board made its final decision to revoke Raymond's license.