GERALD M. ARONOFF vs. BOARD OF REGISTRATION IN
MEDICINE.

Suffolk. April 3, 1995. - July 24, 1995.

Present: LIACOS, C.J., ABRAMS, LYNCH, & O'CONNOR, JJ.

*Board of Registration in Medicine. Doctor*, License to practice medicine.
*Psychotherapist. Due Process of Law*, Revocation of license.

The Board of Registration in Medicine acted within its authority in deter-
mining that a psychiatrist's participation in multiple commercial trans-
actions with his patient during the course of the patient's treatment
constituted misconduct which undermined public confidence in the pro-
fession [832-834], and the board's determination that the appropriate
sanction for the misconduct was the suspension of the physician's li-
cense and the imposition of a $10,000 fine was within its discretion
[834].

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on October 15, 1992.

The case was heard by *Wilkins*, J.

*Paul Cirel* for the plaintiff.

*Deborah S. Steenland*, Assistant Attorney General, for the
defendant.

ABRAMS, J. The Board of Registration in Medicine
(board) issued a final order suspending Gerald M. Aronoff's
license to practice medicine in the Commonwealth. The
board also fined Aronoff $10,000. The board stayed $5,000
of the fine in light of the long delay between the incidents at
issue before the board and the board's decision. The suspen-
sion was stayed[1] on condition that the remaining $5,000 of
the fine be paid. Aronoff appealed to the Supreme Judicial

[1]Although the suspension of Aronoff's license was stayed, the suspension
must be reported to licensing authorities and professional organizations.

Court for Suffolk County for review of the board's order. The board's motion to reserve and report the matter to the full court was denied. A single justice affirmed the board's order. Aronoff appeals. We affirm the judgment.

In November, 1990, the board issued a formal statement of allegations against Aronoff based on alleged economic transactions with a patient (Patient A), which are detailed below and occurred between 1976 and 1981. The board then referred the matter to an administrative magistrate of the Division of Administrative Law Appeals. After a hearing, the magistrate issued a recommended decision. Substantially following the magistrate's recommendations, the board issued a final decision and order on June 18, 1992.

In its final decision, the board determined that Aronoff practiced medicine deceitfully under the principle expressed in *Raymond* v. *Board of Registration in Medicine*, 387 Mass. 708 (1982), and under 243 Code Mass. Regs. § 1.03 (5) (a) (10), (18) (1993). The board concluded that each of the three bases of its decision independently supported the discipline imposed on Aronoff.

I. *Facts*. Gerald M. Aronoff is a board certified psychiatrist who began treating Patient A in 1975 for alcohol abuse and stress from marital problems. Aronoff initially diagnosed Patient A as suffering from alcoholism accompanied by paranoid reaction, but subsequently diagnosed Patient A as suffering from borderline personality disorder with paranoia.

In 1976 or 1977, Aronoff entered into the first of a series of commercial transactions with her. Among the transactions were the purchase from Patient A of twenty-four Waterford crystal glasses for $100, the purchase of Patient A's billiard table for $400, the purchase of a complete service for eight of Royal Doulton china for $100, the purchase of Patient A's 1810 antique sterling service appraised at $1,600 for $200, and the purchase from Patient A of $900 worth of stereo components for $200. Aronoff purchased these items

without seeing them and without having them appraised.[2] Aronoff also sold Patient A two sailboats without first showing them to her — the first for $13,800, the second for $40,000.

These commercial transactions were the focus of the board's decision to discipline Aronoff. In its decision, the board explained that "[t]his is a case in which [Aronoff] demonstrated deplorable clinical judgment and deviated from acceptable standards of care in entering into various commercial transactions with Patient A throughout his treatment of Patient A." The crux of the board's opinion was that the unique dependence many patients develop toward their psychiatrists requires psychiatrists to "maintain proper objectivity and distance from . . . patients, particularly patients as fragile and needy as those diagnosed as having borderline personalities."

After diagnosing Patient A as suffering from personality disorder and substance abuse problems, Aronoff still went forward with the commercial transactions listed above. In the board's opinion, Aronoff's commercial involvement with Patient A was not in her best interests. As the board stated, "[e]specially in the field of psychiatry, where a unique, serious imbalance in power exists between the psychiatrist and the patient, the physician must guard against using his or her position in a manner which would jeopardize a patient's physical, mental or financial well-being. Section 2, Part 2 of the Principles of Medical Ethics, published by the American Psychiatric Association specifically recognizes this potential for harm." On the basis of this evaluation of Aronoff's conduct, the board determined that his misconduct undermined public confidence and the integrity of the medical profession.

II. *Impermissible ad hoc decisionmaking.*[3] Aronoff argues that the board's decision should be reversed because the

---

[2]Aronoff accepted, apparently as gifts, from Patient A two bookcases, a refrigerator, and a dining room table with six chairs.

[3]The single justice rejected this challenge on the ground that the board properly accepted expert testimony as to the relevant standard of care during the relevant times, and also determined that the board considered that

board's decision constituted impermissible ad hoc administrative policymaking. "Although this matter comes to us in the form of an 'appeal' from the decisions of the single justice, we review the decision of the board directly." *D'Amour* v. *Board of Registration in Dentistry*, 409 Mass. 572, 573 n.3 (1991), quoting *Cherubino* v. *Board of Registration of Chiropractors*, 403 Mass. 350, 352 n.4 (1988).

Aronoff argues that the board improperly applied a rule that involvement in commercial transactions with a patient was a per se violation of the basic standard of care. According to Aronoff, absent proof of actual harm to the patient from the commercial transaction, the board had no authority to impose sanctions on him. We do not agree.

In *Raymond, supra* at 713, we explained that the board has "authority to protect the image of the profession." Pursuant to G. L. c. 112, § 5 (1994 ed.), "[t]he board shall . . . adopt rules and regulations governing the practice of medicine in order to promote the public health, welfare, and safety . . . ." In *Raymond, supra*, we upheld the board's ad hoc decisionmaking power under this provision, reasoning that, "[a]lthough formal promulgation may be the best practice, the board may adopt policies by adjudication as well. *Arthurs* v. *Board of Registration in Medicine*, 383 Mass. 299, 312-313 (1981)." We concluded that "[d]isciplining physicians for lack of good moral character, and for conduct that undermines public confidence in the integrity of the profession, is reasonably related to promotion of the public health, welfare, and safety." *Raymond, supra*.[4]

---

such a standard was recognized in publications of professional conduct during the relevant times. The single justice further noted that both parties conceded that "the text of the relevant professional standards of conduct [on which the board relied] . . . covered the relevant period."

[4]Aronoff argues that the holding of *Raymond* v. *Board of Registration in Medicine*, 387 Mass. 708 (1982), turned on the fact that the misconduct sanctioned by the board (trafficking in machine guns) was criminal and, therefore, that the physician had some warning before the adoption of the rule in *Raymond* that in committing crimes he risked censure by the board. Because engaging in commercial transactions with Patient A was not criminal, Aronoff argues that ad hoc decisionmaking as approved in

The board was well within its authority in deciding that Aronoff's participation in the multiple commercial transactions with Patient A during the course of Patient A's treatment for borderline personality disorder constituted misconduct which undermined public confidence in the profession. The board's decision relies on section 2, part 2, of The Principles of Medical Ethics, published by the American Psychiatric Association. Section 2, part 2, provides: "The psychiatrist should diligently guard against exploiting information furnished by the patient and should not use the unique position of power afforded him/her by the psychotherapeutic situation to influence the patient in any way not directly relevant to the treatment goals." Before the single justice, Aronoff conceded that this principle was in effect at the time of the censured conduct. See note 3, *supra*. Aronoff had sufficient warning that his involvement in multiple commercial transactions with Patient A during the course of her treatment was inappropriate and subject to censure through ad hoc decisionmaking in the discretion of the board.

The board's determination that the appropriate sanction for the misconduct was to suspend Aronoff's license and impose the $10,000 fine was within its discretion. See 243 Code Mass. Regs. § 1.05 (2) (1993). We do not substitute our judgment for that of the board. *Palmer* v. *Board of Registration in Medicine*, 415 Mass. 121, 125 (1993), citing *Keigan* v. *Board of Registration in Medicine*, 399 Mass. 719, 723 (1987); *Levy* v. *Board of Registration & Discipline in Medicine*, 378 Mass. 519, 528-529 (1979).[5]

---

*Raymond* is inappropriate. We do not agree. Nothing in *Raymond* suggests that its principles are limited solely to criminal conduct.

[5]Aronoff also argues that (1) in reviewing his case, the board applied regulatory standards which were not in effect when the conduct at issue occurred, and (2) the new regulations, which Aronoff claims were applied to his case, do not establish the standard applied by the board. These grounds relate to the retroactive application by the board of provisions of the Code of Massachusetts Regulations. Aronoff challenges the applicability of these provisions for the first time in this appeal, having failed so to argue either before the board or on appeal to the single justice. Accordingly, we do not consider these arguments. See *Gurry* v. *Board of Pub.*

III. *Delay.* The first action the board took after Patient A filed her complaint was in 1990,[6] when it issued its formal statement of allegations against Aronoff and referred the case to a magistrate, a three and one-half year delay. Although Aronoff raised a due process challenge before the single justice on the basis of the delay, he does not argue this issue on appeal.[7] That issue therefore is deemed waived. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975). See also *Boston Hous. Auth.* v. *Guirola,* 410 Mass. 820, 827 n.9 (1991).

However, we remind the board that 243 Code Mass. Regs. § 1.00 "is based on the principle of fundamental fairness to physicians and patients and shall be construed to secure a speedy and just disposition." 243 Code Mass. Regs. § 1.01 (1) (1993). It behooves the board to take action promptly if it is to be viewed as fair to both physicians and the public. Delay creates suspicion that the board is not playing fair with one or both of the parties. To fulfil its duty to the public and the medical profession, the board must act promptly on complaints by patients.

*Judgment affirmed.*

---

*Accountancy,* 394 Mass. 118, 125-126 (1985); *M.H. Gordon & Sons* v. *Alcoholic Beverages Control Comm'n,* 386 Mass. 64, 68 (1982).

[6]Patient A did not file a complaint with the board until May, 1987, more than five years and seven months after the last alleged incident of misconduct (October, 1981). Title 243, § 1.03 (16), of the Code of Massachusetts Regulations, provides: "Except where the Complaint Committee or the Board determines otherwise for good cause, the Board shall not entertain any complaint arising out of acts or omissions occurring more than six years prior to the date the complaint is filed with the Board." Patient A was within the six-year limitations period for filing her complaint.

[7]The single justice rejected Aronoff's challenge that the delay in the board's final decision, issued almost eleven years after the last incident of misconduct, denied him his due process right to prompt administrative action. Although there was significant delay in the board's decision, the single justice determined there were no grounds for reversal under the due process clause without record evidence of "false starts and stops in the process . . . . Contrast *Weiner* v. *Board of Registration of Psychologists,* 416 Mass. 675, 676-678 (1993) . . . ."