Sikora, Mitchell J., J.
RULING
Upon consideration of the complaint, of the application for preliminary injunctive relief and all supporting factual materials and memoranda of law, and of all opposition materials with exhibits, the court hereby DENIES plaintiff David Satloff s application for a preliminary injunction restraining the defendant Board of Registration in Dentistry from further adjudication of the charges against him in Board Docket Numbers DN-02-003; DN-02-0111; DN-02-048; DN-02-262; DN-03-079; DN-03-189; and DN-04-007. The reasons follow.
REASONING
Introduction: Standards for Preliminary Injunctive Relief
I have applied the settled criteria for consideration of preliminary injunctive relief set out in the leading precedent of Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616-22 (1980). Under those criteria, an applicant for preliminary injunctive relief must demonstrate (a) a likelihood of success upon the ultimate legal merits of its claim; (b) the threat or presence or actionable or inequitable irreparable harm in the absence of preliminary injunctive assistance; (c) the absence or the lesser degree of harm to the opposing party from the imposition of the requested preliminary injunction; and (d) the significance of a public interest, if any is present in the circumstances of the dispute. The court must consider these criteria in combination and not in isolation. In the assessment of any harm, detriment, or burden, the court must always ask whether those consequences are actionable or inequitable in light of the governing law of the circumstances. “What matters as to each party is not the raw amount of irreparable harm the parly might conceivably suffer, but rather the risk of such harm in light of the party’s chance of success on the merits. Only where the balance between these risks cuts in favor of the moving party, may a preliminary injunction properly issue.” Packaging Industries Group, Inc., 380 Mass. at 617.
I will analyze the parties’ factual and legal submissions under each of these criteria in turn.
I. The Merits
A. Jurisdiction
The administrative adjudication of the Board of Registration in Dentistry is still incomplete and ongoing. The hearings are now complete. However, deliberation and final decision are still pending. Upon completion of that adjudication of a final decision, jurisdiction to review the work of the Board would appear to reside exclusively in the Supreme Judicial Court under G.L.c. 112, §64. A specific statutory route of judicial review typically precludes alternate general authorizations of judicial review (such as G.L.c. 38, §14). Id., first and second paragraphs; Department of Public Health v. Cumberland Cattle Co., 361 Mass. 817, 829 (1972). However, §64 operates upon the predicate of a completed administrative decision or order which “has . . . suspended, revoked or cancelled” the professional registration, license, or authority of a claimant. Here we have not reached that point of finality. Consequently exclusive jurisdiction has not yet passed over to the Supreme Judicial Court. The Superior Court possesses jurisdiction under the Declaratory Judgment Act, G.L.c. 231 A, §1; its general statutory grant of legal and equitable power, G.L.c. 212, §4; and under its inherent authority at common law and in equity.
B. Exhaustion of Administrative Remedies
As a general rule of Massachusetts administrative law, the doctrine of exhaustion of administrative remedies requires a complainant to complete the administrative process and to receive a final administrative decision before he may seek judicial review or judicial intervention into the administrative adjudication. The purposes of the doctrine are (a) to permit the administrative agency to apply its presumptive expertise to a dispute within a statutory scheme for which it has primary enforcement responsibility, East Chop Tennis Club v. MCAD, 364 Mass. 444, 451-53 (1973) (leading statement); (b) to permit the agency to undertake competently the technical fact finding within its presumed expertise, Buteau v. Norfolk County Retirement Board, 8 Mass.App.Ct. 391, 394-95 (1979); and (c) to prevent inefficient piecemail judicial review of incomplete administrative adjudicatory proceedings, Broderick’s Case, 320 Mass. 149, 151 (1946). See also Kargman v. The Superior Court, 371 Mass. 324, 329-30 (1976).
Recognized exceptions to the doctrine of exhaustion have evolved. They include circumstances (a) showing the futility or inadequacy of any remaining administrative remedies for the complainant; (b) establishing the decisive issue of the case as a question of law and not of fact or mixed law and fact; (c) presenting a novel or recurrent issue; (d) and/or presenting an issue of public importance (often involving an agency’s treatment of a large number of matters). See Kelleher v. The Personnel Administrator, 421 Mass. 382, 384 (1995); Space Building Corp. v. Commissioner of Revenue, 413 *167 Mass. 445, 448 (1992); Construction Industries of Massachusetts v. Commissioner of Labor & Industries, 406 Mass. 162, 166-67 (1990); and McKenney v. Commission on Judicial Conduct, 377 Mass. 790, 793-94 (1979).
In this instance, the general rule of exhaustion seems to me to be more applicable than any of the possible exceptions. At present the Board has the charges against Dr. Satloff under advisement. We do not know whether it will render a decision adverse to him. We do not know the quality, degree, reasoning, or effect of any decision whatsoever at this point. A favorable decision could result. Or a decision so mildly unfavorable as not to provoke any appeal to the court. The uncertainty of any administrative decision tends to render judicial intervention premature under the usual standards of exhaustion. In addition, the presumption of competence and integrity in behalf of administrative adjudication by state officers tends to weigh against interlocutory intervention by the courts. Withrow v. Larkin, 421 U.S. 35, 55 (1975); and Raymond v. Board of Registration in Medicine, 387 Mass. 708, 715-16 (1982).
C. The Board’s Irregular Use of a Technical Consultant to the Hearing Officer
At the same time, this case discloses the presence of a major procedural irregularity in the work of the Board. It would appear to present a substantial question of procedural and substantive fairness under the statutory requirement of G.L.c. 30A, §10, commanding “agencies [to] afford all parties an opportunity for full and fair hearing”; and under due process standards of both the United States and Massachusetts Constitutions.
Dr. Satloff alleges, and the Board acknowledges, that throughout the ten hearing sessions comprising the adjudication of the charges against him, a former member of the Board has sat with the formal attorney hearing officer as a technical consultant. The former Board member and technical consultant has been Dr. Frederick Mackler. Dr. Mackler participated in the decision to issue the underlying order to show cause (containing the charges under investigation) against Dr. Satloff. His term on the Board has since expired. In the course of the hearing upon preliminary injunctive relief, counsel for the Board explained that Dr. Mackler served to provide ongoing technical assistance to the hearing officer, attorney Mitchell Goldstein. Counsel for Dr. Satloff relates that the hearing officer and the consultant conferred inaudibly through the course of the hearings. It appears that their consultations remained unrecorded and unknown to Dr. Satloff and his counsel (and presumably to the prosecuting attorney). The consultation process is alleged to have continued throughout the evidentiary process and the hearings.
In response to questioning at the preliminary injunction hearing, counsel for the Board justified the adjudicatory consulting arrangement as a permissible exercise of Board expertise. In particular, Board counsel cited the decisions of D'Amour v. Board of Registration in Dentistry, 409 Mass. 572, 579-81 (1991), and Raymond v. Board of Registration in Medicine, 387 Mass. 708, 714-17 (1982).
In light of this very unusual procedural arrangement, I have studied those cases carefully. Those decisions uphold the doctrine that an adjudicatory agency may combine the investigative and the prosecutorial functions without violation of due process or statutory fairness because the law will presume that the agency personnel participating in both the investigative process and the later decisional process have done so with open-minded integrity and impartialiiy. A Board may forfeit that presumption by its particular conduct in a case. Also, the doctrine permitting the combination of investigative and adjudicatory functions does not permit the combination of the accusatory or prosecutorial function with the adjudicatory function.
The Board’s rationale for the consultant arrangement appears to miss the point. Dr. Satloff is not arguing simply that Dr. Mackler has improperly participated in the investigative and adjudicatory roles. Rather the contention here is different and more serious. Dr. Satloff is asserting that the Board has violated the administrative law doctrine that an agency may not substitute covert expertise for overt expert evidence. That principle is well-established in the major Massachusetts precedents: D’Amour v. Board of Registration in Dentistry, 409 Mass. 572, 584-85 (1991) (cited accurately by Satloff, and inaccurately by the Board, upon this point); Morris v. Board of Registration in Medicine, 405 Mass. 103, 113, cert. denied, 493 U.S. 977 (1989); and Arthurs v. Board of Registration in Medicine, 383 Mass. 299, 309 (1981). Those decisions prohibit the use of a “haze” of silent expertise as a basis for adjudicatory decision because it raises the risk of arbitrariness and because it conceals the reasons for a decision from the testing processes of open confrontation and controversion in front of the fact finder.
The consulting procedure described here is illustrative. Dr. Mackler’s communications to the hearing officer as fact finder and adjudicator are unrecorded, unknown, and unknowable to the accused respondent. Dr. Satloff and his counsel therefore have had no opportunity to confront and to controvert any information of evidentiary or doctrinal significance communicated by Mackler to hearing officer Goldstein. They have had no opportunity to cross-examine Mackler. They have had no opportunity to retain a responsive or countervailing expert witness. The appearance and the danger is that Mackler is functioning, wittingly or unwittingly, as an adverse expert witness immunized from confrontation. This appearance and risk may infect the fairness and the reliability of the entire ten hearing sessions of the adjudication.
*168 The consulting arrangement here differs from one occasionally appearing in agency adjudications. On those occasions a layperson may, by necessity or by discretion, serve as an adjudicatory officer in a hearing of factual matters upon which he or she possesses particular competence or expertise. At the same time, that hearing officer (sometimes the member of a board or agency) will receive the ongoing assistance of an attorney (often counsel to the board or agency) upon matters of evidence and procedure. Typically the advising attorney will render assistance upon matters of evidence and procedure openly so that the parties and their counsel can understand the reasons for any rulings and so that they can respond to them. That arrangement differs drastically from the one described here.
In this instance, a trained lawyer is functioning as the hearing officer or adjudicator. He is receiving advice or commentary not upon matters of evidence or procedure, but apparently upon matters of substantive fact finding or factual interpretation. Moreover, he is receiving them out of the hearing of the parties and their counsel. This arrangement resembles the use of a shadow adjudicator.
If the parties had brought this action at the threshold of the ten adjudicatory hearings and if they had presented the consulting arrangement as an issue for injunctive relief, I would interpret the rule of Arthurs, Morris, and DAmour to prohibit the arrangement and to warrant a preliminary injunction against it. At this point the hearings have gone to completion. The hearing upon preliminary injunctive relief took place on the day before the scheduled ninth and tenth sessions. The die was cast. The only feasible course of injunctive action was to order the Board to begin anew without the consulting process. Even that injunctive order may not have been adequate. It might have been necessary to order the replacement of hearing officer Goldstein after the extended relationship with Mackler. In the total circumstances, I have decided against the imposition of those onerous orders for two basic reasons. First, we do not know yet whether this irregularity will be part of a process resulting in a significant adverse sanction upon Dr. Satloff. Second, if it does, prompt and adequate judicial review will be available from the Supreme Judicial Court.
II. Irreparable Harm to the Plaintiff Satloff
Does Dr. Satloff confront the risk or the presence of irreparable harm without a preliminary injunctive order at this time from the Superior Court? I do not believe so. If the Board renders an adverse decision depriving him of licensure or imposing some lesser sanction, he may pursue an immediate appeal to the Supreme Judicial Court under G.L.c. 112, §64. That action will enable him to present the issue of irregular consultation by the hearing officer, and other grounds upon which he is challenging the fairness and accuracy of the Board’s adjudicatory process. Under §64, the Supreme Judicial Court has held that it may enjoin the actions of the boards of professional registration as necessary to protect the constitutional interests of licensees. Gurry v. Board of Public Accountancy, 394 Mass. 118, 121-30 (1985); and Keigan v. Board of Registration in Medicine, 399 Mass. 719, 720 n.1 (1987). A professional license typically comprises a constitutionally protectible property interest. The fairness of procedures employed to diminish or deprive a registrant of that interest will typically have due process stature. Consequently, if an unfavorable decision materializes against Dr. Satloff, judicial review by the Supreme Judicial Court is available to address the legal claims rehearsed in the current Superior Court action. In other words, the denial or the postponement of preliminary injunction relief now does not expose him to the threat or the presence of irreparable harm incurable by alternate immediate judicial review later.
III. Harm to the Board; Consequences to a Public Interest
The Board argues that an injunction against its disciplinary proceeding would endanger its interest and duly to serve the public health, safety and welfare against the alleged substandard practices of Dr. Satloff (alleged to be a delegation of dental procedures to auxiliary personnel; deficient record keeping; unlawful advertising; failure to comply with infection-control standards; and the failure to maintain license renewal in a timely manner). Those concerns are valid. They may not be extremely urgent. The record shows that the Board has accumulated complaints from seven patients over several years and has pursued the current proceeding steadily but gradually. It has ceased prosecution of charges derived from one of the patients. I give those considerations some weight. In combination with the usual operation of the doctrine of exhaustion of administrative remedies, they weigh against the imposition of a preliminary injunction against the completion of the Board’s adjudicatory process.
Conclusion
The present case is somewhat unusual. The operation of the doctrine of exhaustion of administrative remedies permits the Board to complete its adjudicatory process despite the apparent presence of a significant procedural irregularity. The adjudicatory proceeding may result in a decision favorable to Dr. Satloff or one not so unfavorable as to provoke judicial review. If a significant sanction does result against his licensure, he has immediate recourse to judicial review by the Supreme Judicial Court. That court can provide him with any warranted injunctive relief.