LEONARD WEINER *vs.* BOARD OF REGISTRATION OF
PSYCHOLOGISTS.

Suffolk. September 8, 1993. - December 29, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Board of Registration of Psychologists. Administrative Law*, Agency, Pro-
ceedings before agency, Judicial review.

Where the Board of Registration of Psychologists, by excessive delay, re-
peated issuance of orders to show cause, and repeated dismissals abused
the procedures governing its adjudicatory proceedings and failed to pro-
vide a speedy determination of a matter before it, the board's decision
to suspend a certain psychologist was based on unlawful procedure; the
matter was remanded for dismissal with prejudice. [680-683]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on May 13, 1988.

The case was reported by *Greaney,* J.

*Joseph B. Bertrand* for the plaintiff.

*Beth D. Levi,* Assistant Attorney General, for the
defendant.

LYNCH, J. The petitioner, a psychologist, appealed to a sin-
gle justice of the Supreme Judicial Court pursuant to G. L.
c. 112, § 64 (1992 ed.), from a decision of the Board of Re-
gistration of Psychologists (board), suspending his license to
practice in Massachusetts for not less than two years. The
board based its decision on the findings and conclusions of an
administrative magistrate who determined that, in 1972, the
petitioner acted improperly and with gross negligence when
he permitted a patient under his care to serve as a sexual
surrogate in order to treat another patient. The board found
that a minimum two-year suspension was warranted because
the petitioner, having been disciplined for two previous unre-
lated incidents, exhibited a general inability to conform to

the standards of conduct for licensed psychologists. In addition, the board ruled that the petitioner's actions constituted gross misconduct. The single justice reserved and reported the case, without decision, to the full court.

The petitioner claims that: (1) the board's decision is unsupported by substantial evidence; (2) the board's decision violates his right to due process; (3) the board is barred from suspending him because the matter was previously dismissed; (4) the board's decision is contradictory and constitutes an ex post facto application of its regulations; (5) the doctrine of res judicata requires that the board adhere to its earlier dismissal of this action; and (6) the board is barred from bringing this action because the incident giving rise to the action is too remote in time. We conclude that the board's decision was made on unlawful procedure, and we, therefore, reverse.

1. *Prior proceedings.* On March 3, 1980, the board issued an order to show cause, alleging that, in the spring of 1972, the petitioner encouraged a patient (complainant) to serve as a sexual surrogate; that in the same year the petitioner permitted the complainant to engage in sexual relations with another patient in the petitioner's office and in his presence; and that in September of 1975, the petitioner had sexual relations with the complainant on two occasions.[1] The March 3, 1980, order to show cause stated that the general counsel to the Office of Consumer Affairs would prosecute the matter. The petitioner moved to dismiss the complaint. On July 23, 1980, the board informed the petitioner's attorney that it had voted to dismiss the case without prejudice because of the complainant's request that the matter be stayed pending resolution of complainant's judicial action against the petitioner. The board warned that the dismissal should not be construed as an acceptance of the petitioner's assertions in his motion to dismiss. Then, on August 13, 1980, the board informed the petitioner's attorney that the board considered

---

[1]Each of the orders to show cause discussed in this opinion relates to the same allegations of improper conduct by the petitioner which occurred in 1972 and 1975.

the matter dismissed and that, "[s]hould any future request be made by [the complainant] to reopen this matter, the Board would consider, at that point, the propriety of such a request."

By letter, dated August 15, 1980, the complainant's attorney informed the board that it had misunderstood the complainant. The letter stated that, on July 18, 1980, the complainant's attorney informed the general counsel of the Office of Consumer Affairs that the complainant desired the complaint to go forward without regard to the civil action. According to the complainant's attorney, the general counsel stated that, on the following Monday, he would be replaced as general counsel and that his replacement would contact the complainant's attorney. After one month had passed without his hearing from the board, the complainant's attorney telephoned the new general counsel, who informed him that the case had been dismissed. On September 8, 1980, and again on October 1, 1980, the complainant's attorney wrote to the board detailing the complainant's desire to reinstate the complaint and to reopen the matter. On December 2, 1980, the board again discussed the matter and decided to meet with an assistant attorney general to consider "the next course of action."

On June 2, 1981, the board voted to issue a new order to show cause in this matter. At the board's October 23, 1981, meeting, however, it voted not to reopen the matter against the petitioner. The board admits that it is not clear why the board issued an order to show cause in 1981, and then voted not to reopen the matter. On November 30, 1982, the complainant's attorney again communicated with the board. He asked the board to reinstate the case against the petitioner pursuant to the board's July 23, 1980, letter stating that the action was stayed pending resolution of the complainant's judicial claim. The attorney informed the board that, in March, 1982, there was a jury verdict in favor of the complainant. On December 8, 1982, the petitioner's attorney objected to the reinstatement of the complaint. The petitioner's attorney contended that the matter should not be reopened

because the board's dismissal of the complaint on August 13, 1980, was a final decision of the board. The petitioner further argued that reopening the matter was inappropriate because after the November 18, 1980, hearing on the complainant's request to reopen the matter, the board took no action. The petitioner argued that any attempt to reopen the proceedings would violate the board's adjudicatory rules of practice and procedure.

Years later, on February 4, 1985, the board issued another order to show cause. In March, 1985, the petitioner filed an answer and a motion to dismiss. On November 1, 1985, the board vacated the prior dismissals because they were "based on erroneous information and were without prejudice." The board also stated that "[a] new Order to Show Cause will issue forthwith." Almost one year later, on September 30, 1986, the board issued yet another order to show cause, which it referred to the division of administrative law appeals (division). After a hearing, an administrative magistrate recommended that the petitioner's motion to dismiss be allowed, stating:

> "Over six years elapsed between the original and most recent Orders to Show Cause. Documents once in the possession of the Board cannot be located. The allegations of the Orders to Show Cause involve events occurring in 1972 and 1975. Fundamental fairness requires that [the petitioner's] Motion to Dismiss be allowed. Laches has been defined as 'the neglect for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done . . . The delay may be so long that under the circumstances many of the important facts have become obscured.' *Bell* v. *Mackey*, 191 S.C. 105, 3 S.E. 2d 816, 824, 825 [1939]. Furthermore, the instant Order to Show Cause is violative of [801 Code Mass. Regs. § 1.01 (2) (b) (1993)]; the Standard Adjudicatory Rules of Practice and Procedure 'shall be construed

to secure a just and speedy determination of every proceeding.' "

The magistrate also concluded that, although in November of 1985, the board purported to vacate all dismissals because they were based on erroneous information, "the record does not reflect any erroneous information, only a misunderstanding on the Board's part in the summer of 1980 . . . . That misunderstanding was immediately cleared up by [the complainant's] attorney."

The administrative magistrate found: "On March 9, 1984, the Board sent a letter stating that the 'original complaint was dismissed because too long a time had passed' (Exhibit 6)." The only evidence of the March 9, 1984, letter contained in the record was the affidavit of Attorney Robert A. Long, Jr.[2] After the hearing before the magistrate was adjourned, counsel for the board was "requested to furnish . . . a copy of the March 9, 1984 letter referred to in Exhibit 6." By letter, dated December 10, 1986, counsel for the board informed the magistrate that she was unable to find the letter.

---

[2]The following is the text of the affidavit of Robert A. Long, Jr.:

"1. I, Robert A. Long, Jr., duly sworn as an Attorney at Law with the Law Firm of Murphy and Mitchell, P.C., did in 1985, represent the interests of the respondent in the above matter, Dr. Leonard Weiner.

"2. I, on March 6, 1985, acting in my capacity as attorney for Leonard Weiner, Ph.D., did visit the Board of [Registration of] Psychologists and did view the materials which [it] had in [its] possession about the Leonard Weiner proceeding.

"3. On March 6, 1985, while examining the aforesaid materials on Dr. Leonard Weiner, I did view and take note of a letter dated March 9, 1984 with the Board of Registration of Psychologists letter head and signed by Anne E. Pulsifer, Ph.D., Chairman, which stated with reference to the Weiner matter, that the 'original complaint was dismissed because too long a time had passed.'

"SIGNED AND SWORN TO UNDER THE PAINS AND PENALTIES OF PERJURY THIS 21ST DAY OF NOVEMBER, 1986.

"/s/    Robert A. Long, Jr.

"Robert A. Long, Jr."

On January 26, 1987, the board voted not to adopt the administrative magistrate's recommendation of dismissal and requested that the division schedule a hearing on the merits. On May 8, 1987, the board's motion for summary decision was denied. Hearings on the merits were held on June 26, July 14, August 17, and September 30, 1987. On January 12, 1988, the administrative magistrate recommended that the board suspend the petitioner's license for one year because of his conduct in 1972. The magistrate concluded that, by using the complainant as a sexual surrogate the petitioner acted "improperly and with gross negligence." The magistrate concluded, however, that the board had failed to prove that in 1975 the petitioner engaged in sexual relations with the complainant. The board adopted the findings of fact and conclusions of law contained in the administrative magistrate's January 12, 1988, decision, but refused to adopt the administrative magistrate's recommendation that the petitioner's license be suspended for one year and instead suspended the petitioner's license for "no less than a two (2) year period of time."

In sum, we have before us an appeal from a 1988 decision of the board argued here in 1993, but based on conduct that occurred in 1972. As the complaint meandered through the administrative proceedings, the petitioner was informed on four separate occasions that the complaint had been dismissed. After an administrative magistrate recommended that the complaint be dismissed, the board continued the charges without explaining or commenting on the magistrate's recommendation

2. *Standard of review.* We may affirm, remand, set aside, or modify an agency decision, or compel any action unlawfully withheld or unreasonably delayed, if we determine that "the substantial rights of any party may have been prejudiced because the agency decision is . . . [m]ade upon unlawful procedure." G. L. c. 30A, § 14 (7) (*d*) (1992 ed.).

3. *The board's procedures.* The board's procedures were deficient in at least two respects. The board voted not to accept the magistrate's recommendation and rejected without

comment or explanation the magistrate's finding that, in 1984, the complaint had been dismissed because too long a time had passed. When the board rejects a magistrate's recommendation, a statement of explanation is required. "[I]ts decision should, consistent with the requirements of G. L. c. 30A, § 11 (8), contain a considered articulation of the reasons underlying that rejection." *Vinal* v. *Contributory Retirement Appeal Bd.*, 13 Mass. App. Ct. 85, 102 (1982). See *Morris* v. *Board of Registration in Medicine*, 405 Mass. 103, 110-111, cert. denied, 493 U.S. 977 (1989).

If this were the only failing on the board's part, we would remand the matter so that the board could provide a further statement of reasons for its rejection of the magistrate's finding.

The procedure followed by the board was, however, deficient in another aspect. As early as August, 1980, the board was fully aware that the complainant wanted the disciplinary matter to continue yet the matter lingered with nothing happening. The rules governing practice and procedure before the board require that they are to be "construed to secure a just and speedy determination of every proceeding." 801 Code Mass. Regs. § 1.01 (2) (b) (1993). This case presents us with the antithesis of a speedy determination. Although § 1.01 (2) (b) does not fix a specific time period for the board to act, it imparts to the board the responsibility of diligently pursuing matters for which it is responsible. In regard to this responsibility the remarks of the board's own prosecutor made in 1986, are pertinent:

> "At first I would like to say that I am not happy at all with this proceeding. I can't say that anybody in my office is happy how this proceeded. There is no question the way things ought to work, and things have improved at the Division of Registration in recent years; and I don't think this would happen again but the agency has been in pretty bad shape over the years, and they haven't had the attention they ought to have had. And, this is an example of not putting the proper resources

where they ought to go. *It's hard for me to even piece together what happened with this case over the years because the file isn't what it should be.* And that is to say, the [same] people aren't even working at the agency any more. It's an entirely new Board, all new Board members; they aren't the same ones any more. And the Clerks of the Board, the recent one has been there for about a year but they have changed every couple of months over the years. *From what I can tell, and from, I think, from what the last Exhibit, the letter from Michael Avery shows, that there was some early mistakes made or misunderstanding which lead [sic] to the first dismissal.* It appears from that letter, *from what I can tell,* that the complainant did want to go forward with the case but there was some failure to communicate. And the Board members did not understand that. *And the mistake has been perpetuated over the years. . . . At this point, where we are — to be frank — cleaning up mistakes of predecessors which I acknowledge we are responsible for.*" (Emphasis added.)

Despite the seriousness of the accusations, the record evidences that, in handling this matter, the board failed to proceed in a manner which was just or speedy.

Not only has the pace of this proceeding been desultory at best, but also in the years that it was pending, the board issued or voted to issue four separate orders to show cause, alleging substantially the same conduct, against the petitioner. During that same time, on approximately four occasions the board appears to have dismissed the matter. On one other occasion, the board voted not to reopen the matter only months after it had voted to issue a new order to show cause.

The board, by excessive delay, repeated issuance of orders to show cause, and dismissals, created an administrative morass, and thus abused the procedures that govern adjudicatory proceedings of this type. The board failed to construe

and apply the adjudicatory rules governing its proceedings to provide a just and speedy determination of this matter.

We conclude, therefore, that the board's decision suspending the petitioner was based on unlawful procedure. The decision of the board is reversed, and the board is to dismiss the complaint with prejudice.

*So ordered.*