GEORGE A. SHWEIRI, guardian[1] *vs.* COMMONWEALTH.

Suffolk. September 13, 1993. - November 10, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Medicaid. Subrogation. Massachusetts Tort Claims Act. Words*, "Third party."

In the case of a patient in a State hospital who sustained injuries as the result of negligence by employees of the Department of Mental Health, that department was a "third party" for purposes of the subrogation provisions of G. L. c. 18, § 5G, with the result that the Department of Mental Health's responsibility for damages under G. L. c. 258, the Massachusetts Tort Claims Act, was offset by the Medicaid payments made by the Department of Public Welfare to treat the patient's injuries. [388-393]

CIVIL ACTION commenced in the Superior Court Department on December 4, 1987.

The case was reported to the Appeals Court by *Robert Malcolm Graham*, J., on a statement of agreed facts. The Supreme Judicial Court transferred the case on its own initiative.

*Deborah S. Steenland*, Assistant Attorney General, for the Commonwealth.

*Kerry Paul Choi* for the plaintiff.

GREANEY, J. The plaintiff, in his capacity as guardian of his sister (ward), commenced an action in the Superior Court pursuant to G. L. c. 258 (1992 ed.), the Massachusetts Tort Claims Act, seeking to recover damages from the Commonwealth for negligence. The parties executed an "Agreed Statement of Material Facts," in which they stipulated that

---

[1]The plaintiff is the guardian of his sister, Josephine A. Shwairi, who spells her name differently from her brother.

employees of the Department of Mental Health had been causally negligent in caring for the ward, that the Commonwealth was liable under G. L. c. 258 for $80,000 in damages, and that the Department of Public Welfare had paid $100,774.31 through Medicaid for treatment of the ward's injuries. A judge in the Superior Court allowed a joint motion by the parties to report the case to the Appeals Court for decision of legal questions raised by the agreed facts. See G. L. c. 231, § 111 (1992 ed.); Mass. R. Civ. P. 64, 365 Mass. 831-832 (1974). We transferred the case to this court on our own motion. We conclude that G. L. c. 18, § 5G (1992 ed.), applies to the case,[2] that the Department

[2]General Laws c. 18, § 5G (1992 ed.), reads as follows:

"In this section, the word 'claimant' shall mean any person who suffers any loss from property damage, accident, illness, injury or otherwise for which monies may be provided by liability insurance, workmen's compensation, or any other third party.

"When any claimant receives payment from a liability or workmen's compensation insurer or any other third party, the claimant shall repay to the department an amount equal to the benefits provided under any program of assistance administered by the department to or on behalf of the claimant, the claimant's spouse or children, or any individual whom the claimant is required by law to support, but only to the extent that such benefits were provided as a result of the property damage, accident, illness, injury or other loss suffered by the claimant; and the application for and receipt of such benefits shall, after notification has been given to the third party, operate as a lien to secure repayment against monies which may be provided by liability insurance, workmen's compensation, or any other third party up to the amount of such benefits.

"If benefits are provided under any program of assistance administered by the department as a result of property damage, accident, illness, injury, or other loss for which a third party may be liable, the department shall require the person receiving such benefits to assign to the commonwealth an amount equal to the benefits so provided from the proceeds of any such claim against the third party.

"A claimant shall notify the department in writing upon commencement by him of a civil action or other proceeding to establish the liability of any third party or to collect monies payable under accident, liability, or health insurance, workmen's compensation, or from any other source by reason of the accident, injury or disability referred to in the preceding paragraph.

"The commonwealth shall be subrogated to a claimant's entire cause of action or right to proceed against any third party and to a

of Mental Health, which was responsible for the ward's injuries, is a "third party" within the meaning of that term in § 5G to the Medicaid transaction between the ward and the Department of Public Welfare, and that the Department of Mental Health's responsibility in damages is offset by the Medicaid payments made by the Department of Public Welfare to treat the ward's injuries. In so concluding, we reject the plaintiff's position that the Department of Mental Health, as a State agency, cannot be a third party to the Commonwealth as a whole or to the Department of Public Welfare, which administers the Medicaid program. Accordingly, we direct the entry of judgment for the Commonwealth.

The pertinent background of the case is as follows. The ward has been diagnosed as suffering from chronic undifferentiated schizophrenia, a mental illness for which she has on several occasions been admitted to psychiatric hospitals. In 1985, at the time of the events giving rise to liability in this case, she was a patient at Medfield State Hospital, which is operated by the Department of Mental Health.

The ward has a history of threatening and attempting suicide. In the unit in which she was housed at Medfield State Hospital, patients were not permitted to have sharp objects or matches, and they were not permitted access to their rooms unsupervised. On July 3, 1985, the ward entered her room unsupervised by hospital employees, with matches in her possession. The ward set fire to her bed and lay down on it in an attempt to commit suicide. She suffered serious injuries.

---

claimant's claim for monies to the extent of assistance provided under chapter one hundred and seventeen, chapter one hundred and eighteen, or chapter one hundred and eighteen E. The department, with the consent of the attorney general, may, by attorneys employed or selected by it, commence a civil action or other proceeding on behalf of the commonwealth to establish the liability of any third party or to collect such monies if a claimant does not commence such a civil action or other proceedings within nine months after the date of the accident, injury, or onset of disease or other disability."

The Commonwealth has stipulated to the negligence of its employees, and the parties have stipulated that the ward's damages under G. L. c. 258 are $80,000.[3] As has been mentioned, the parties have also stipulated that the Department of Public Welfare has provided Medicaid payments in the amount of $100,774.31 for the treatment of the ward's burn injuries. The Department of Public Welfare has given notice to the Department of Mental Health of its claim of a lien on the damages in accordance with the second paragraph of G. L. c. 18, § 5G. See note 2, *supra*. The parties also have agreed that "[j]udgment may enter in favor of the [Commonwealth], and the plaintiff can recover nothing if . . . the [appellate court deciding the case] determines that the lien [established in G. L. c. 18, § 5G] is applicable to [the plaintiff's] recovery against the [Commonwealth]. . . ."

We turn to an analysis of G. L. c. 18, § 5G. That statute is the Commonwealth's response to the Federal requirement that any State which chooses (as the Commonwealth has) to participate in the Medicaid program[4] must "take all reasonable measures to ascertain the legal liability of third parties (including health insurers) to pay for care and services available under the plan." 42 U.S.C. § 1396a(a)(25)(A) (Supp. 1993). See *Harlow* v. *Chin*, 405 Mass. 697, 711 (1989) (considering G. L. c. 18, § 5G, and noting that "the Commonwealth's pursuit of [Medicaid] reimbursement is required by Federal law"). See also *Harris* v. *McRae*, 448 U.S. 297, 301 (1980); *New England Memorial Hosp.* v. *Rate Setting Comm'n*, 394 Mass. 296, 298 (1985). This requirement in turn furthers an ultimate goal of Medicaid — that the program "be the payer of last resort, that

---

[3]It is unclear how the figure of $80,000 was arrived at. Papers filed by the plaintiff after the statement of agreed facts was filed explain that the figure of $80,000 reflected that expenses, such as legal and expert witness fees, could have reduced the $100,000 maximum that the plaintiff was entitled to recover under G. L. c. 258 by $20,000.

[4]Medicaid is a joint Federal-State program that pays for medical care to indigent aged, blind, and disabled individuals and indigent families with dependent children. 42 U.S.C. § 1396 (1992).

is, other available resources must be used before Medicaid pays for the care of an individual enrolled in the Medicaid program." S. Rep. No. 146, 99th Cong., 2d Sess. at 312 (1986). Section 5G applies to benefits provided to a tort claimant who incurs a loss as a result of "property damage, accident, illness, injury or other loss." Such a claimant must repay to the Commonwealth amounts that have been received under Medicaid for the loss if the claimant receives other compensation for the same loss "from liability insurance, workmen's compensation, or any other third party." G. L. c. 18, § 5G. Moreover, the claimant's receipt of Medicaid benefits "shall . . . operate as a lien" on any amounts received by the claimant from an insurer or third party. *Id.*

The precise issue is whether the Department of Mental Health, the State agency liable for the ward's injuries, is a third party from the perspective of the Medicaid program for purposes of the statutory subrogation provided in G. L. c. 18, § 5G. The term "third party" is not defined in G. L. c. 18, § 5G (or elsewhere in the welfare laws), in Federal statutes, or in any pertinent legislative history. However, administrative regulations promulgated by both the Department of Public Welfare, and the United States Department of Health and Human Services, strongly suggest that a State agency may be a "third party" with respect to the Medicaid program. In the Massachusetts regulations, "[t]hird-[p]arty [l]iability" is defined as "the legal obligation of any person, company, or agency to pay all or part of an individual's medical expenses." 106 Code Mass. Regs. § 501.500 (1993).[5] This provision states that its definitions apply "for the purposes of the MA [Medicaid] Program." *Id.* The reference to an "agency" clearly appears to contemplate payments by other government entities as "third parties." Moreover, the reference is not confined to Federal agencies, as it might be

---

[5]This regulation was first adopted in 1981. See Supp. 289 Mass. Reg. 22 (Dec. 11, 1981).

if it were intended to refer specifically to Medicare.[6] The Commonwealth's regulations support treating the Department of Mental Health as a "third party" for the purposes of G. L. c. 18, § 5G.

The Health Care Financing Administration of the United States Department of Health and Human Services has adopted regulations implementing the third-party liability provisions of 42 U.S.C. § 1396a(a)(25). See 42 C.F.R. §§ 433.135 et seq. (1992). In light of the Federal role in defining the Commonwealth's Medicaid plan, Federal interpretations of the third-party liability requirement provide guidance. The Federal regulation in point defines "[t]hird party" as "any individual, entity or program that is or may be liable to pay all or part of the expenditures for medical assistance furnished under a State plan." 42 C.F.R. § 433.136 (1992).[7] The use of the broad term "program" in the Federal regulations, like the reference to "agency" in the State regulations, suggests that State agencies are to be considered as "third parties."

---

[6]The plaintiff points out that, in contrast with 106 Code Mass. Regs. § 501.500 (1993), the regulations at 106 Code Mass. Regs. §§ 450.316-450.321 (1989) discuss third-party liability only in reference to private health insurers and Medicare. However, those sections are directed to "requir[ing] all *providers* to make diligent efforts to obtain payment first from health insurers" (emphasis added). 106 Code Mass. Regs. § 450.316. Health care providers are not in a position to enforce payment obligations by entities other than insurers, so the absence of any reference to such other entities in those sections is not remarkable.

We note that the third-party liability regulations for the Commonwealth's "CommonHealth" program, see G. L. c. 118E, §§ 6A, 6B (1992 ed.), refer to private insurers, Medicare, and "other government agency responsibility." 106 Code Mass. Regs. § 490.303 (1989). This might seem to suggest that the absence of any reference to government agency responsibility in the corresponding Medicaid regulations is significant. It is more likely, however, that the reference in the CommonHealth regulation to "government agency responsibility" is intended to refer specifically to the Medicaid program, which CommonHealth is intended to supplement. See G. L. c. 118E, § 6A (1992 ed.).

[7]This regulation was first adopted in 1980. See 45 Fed. Reg. 8984 (Feb. 11, 1980).

We rely on these definitions to conclude that, in the circumstances of this case, the Department of Mental Health is a third party under G. L. c. 18, § 5G. The purposes of the statutes involved are clearly served by this conclusion. The Federal and State governments share in the financial obligations of the Medicaid program; in Massachusetts, each pays fifty per cent of the plan's obligations. Department of Health and Human Services, Health Care Financing Administration, Pub. No. 45-3, State Medicaid Manual, Rev. No. 74, § 2501 (1991). See also *Harlow* v. *Chin, supra* at 710-711. Although the Commonwealth distributes the Medicaid funds, both the Federal and State governments benefit if other sources are available to pay expenses that Medicaid would otherwise pay.[8] From the perspective of either the Federal or State government, therefore payment by the other is payment by a third party. Cf. *New York State Dep't of Social Servs.* v. *Bowen,* 846 F.2d 129 (2d Cir. 1988) (Federal Medicare program is a third party to Medicaid). The goal that Medicaid be the payer of last resort is thus clearly advanced. The goal of G. L. c. 258 is also served by ensuring that the statutory limit on damages ($100,000) is not exceeded. We doubt the Legislature intended in a case like this

---

[8]The plaintiff argues that there will be no such benefit to the Commonwealth in this case. He suggests that one-half of the recovery will go to the Federal government and notes the Federal statutory guideline that only "where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery" should "the State or local agency . . . seek reimbursement." 42 U.S.C. § 1396a(a)(25)(B) (Supp. 1993). Therefore, he contends, the Commonwealth should not pursue recovery. We think that this is an unnatural reading of the statute. Under this interpretation, a State should never seek recovery from one of its own agencies. Moreover, even where the third party involved is not a State agency, a State should only pursue reimbursement when the potential total recovery is *twice* the costs of recovery, to compensate for the Federal reimbursement. Surely the statute would have been more explicit if these were its intentions. We agree with the United States Court of Appeals for the Second Circuit that "[t]he provision clearly addresses the costs of recovery, not the identity of the third parties from which recovery is sought." *New York State Dep't of Social Servs.* v. *Bowen,* 846 F.2d 129, 134 (2d Cir. 1988). As long as the total amount recovered exceeds the costs of recovering it, the Medicaid program benefits.

that the Commonwealth be required to compensate the ward for injuries caused by its negligence in addition to Medicaid payments exceeding $100,000 made on her behalf.

We comment on two other arguments made by the plaintiff to support his position.

(a) The plaintiff maintains that a 1982 amendment to G. L. c. 18, § 5G, that deleted a paragraph containing a reference to payments from "accident, liability or health insurance, workmen's compensation or any other source," and replaced it with a paragraph containing a reference to "liability insurance, workmen's compensation, or any other third party" indicated a legislative intent to narrow the category of entities from which recovery could be had. Compare G. L. c. 18, § 5G (as appearing in St. 1977, c. 363A, § 52), with § 5G (as amended by St. 1982, c. 430, § 1). We disagree. The other paragraphs of the original statute, which remain in the current version, refer to "third party," except for one which continues to refer at one point to "any other source." It is likely that the language in the amended paragraphs was changed to make it consistent with those other paragraphs. Moreover, the amended statute also eliminated the original references to accident and health insurance. It cannot be persuasively maintained that the Legislature intended to eliminate those insurers as liable entities.[9]

(b) The plaintiff relies heavily on *Massachusetts* v. *Secretary of Health & Human Servs.*, 816 F.2d 796 (1st Cir. 1987), aff'd sub nom. *Bowen* v. *Massachusetts*, 487 U.S. 879 (1988),[10] in arguing that one State agency cannot be a "third party" to another State agency administering the Medicaid program. In that complex case, the Secretary of Health and Human Services had disallowed Medicaid payment for special education services provided pursuant to State law by the Department of Education to mentally re-

---

[9]The plaintiff also suggests that the 1982 amendment to G. L. c. 18, § 5G, was made in response to the intervening enactment of G. L. c. 258. There is nothing to support this.

[10]The decision of the United States Supreme Court dealt with a jurisdictional issue which is not relevant to our present problem.

tarded individuals who were qualified to receive Medicaid assistance. The Secretary argued that, under 42 U.S.C. § 1396a(a)(25), the Department of Education was a "third party" legally liable for the services, so that those services could not be paid for by the Medicaid program.

The United States Court of Appeals for the First Circuit rejected the Secretary's third-party liability argument on two grounds. First, the court noted that the Department of Education was not liable for the services at issue, but voluntarily provided them based on a State legislative enactment. *Id.* at 802-803. In contrast, in the present case, the Department of Mental Health's liability for the ward's injuries is based on its own negligence. The department made no voluntary decision to pay for those injuries. Second, the Court of Appeals noted that both the Departments of Education and Public Welfare were agencies of the Commonwealth and "serve[d] complementary social welfare goals." It therefore rejected the argument that the agencies could be "third party" to one another, observing that the decision should "not turn on how a state subdivides its social welfare functions and authority." *Id.* Our decision in this case is not based on the separateness of the Departments of Mental Health and Public Welfare, but on the nature of the Department of Mental Health's liability to the ward.[11]

The provisions of G. L. c. 18, § 5G, apply to the Department of Mental Health's liability to the plaintiff for the injuries sustained by the ward. The payments made by the Department of Public Welfare to treat the ward's injuries ($100,774.31) exceed the damages limitation imposed by G. L. c. 258 ($100,000) as well as the amount of damages ($80,000) agreed to in the stipulation. In accordance with

---

[11]The fact that the *Massachusetts* v. *Secretary of Health & Human Servs.* turns on considerations not present in this case renders it unnecessary to consider the plaintiff's argument that the Commonwealth, having prevailed in that decision, is collaterally estopped from arguing in this case that the Department of Mental Health is a third party under G. L. c. 18, § 5G.

the stipulation, judgment is to enter in the Superior Court for the Commonwealth.[12]

*So ordered.*

---

[12]Having decided the case on the basis of G. L. c. 18, § 5G, we need not consider the Commonwealth's alternative argument that under common law tort and subrogation principles it could offset against its liability for damages under G. L. c. 258 the amounts already paid on behalf of the ward through Medicaid.