Brassard, J.
This medical malpractice action arose out of the birth of the minor plaintiff, Elizabeth Whelan (Elizabeth). Elizabeth alleged, through her mother and next friend, Deborah Whelan, that she had suffered severe and permanent brain damage as a result of the negligence of the defendant, Henry Kirkendall, Jr., M.D. (Kirkendall). The injuries were alleged to have occurred during the prenatal period and labor and delivery of Elizabeth. Judgment was entered in Elizabeth’s favor following a juiy trial and verdict. The Commonwealth of Massachusetts Division of Medical Assistance (the Division) seeks to recover, by means of a statutory lien, the medical assistance (Medicaid) benefits it paid on behalf of Elizabeth, whose parents applied for and received the Medicaid benefits for Elizabeth due to her injuries. Elizabeth has filed a motion to discharge the Division’s lien. For the following reasons, Elizabeth’s motion is DENIED.
BACKGROUND
Elizabeth was born on August 6, 1988. Upon birth, it was discovered that Elizabeth suffered from severe brain damage as well as a diaphragmatic hernia. Kirkendall cared for and treated Elizabeth’s mother during her pregnancy with Elizabeth, up to and including her deliveiy.
Due to the increased medical expenses incurred as a result of Elizabeth’s brain damage, Elizabeth’s parents applied for and received Medicaid benefits in February, 1989. As of December 12, 1995, the Division had provided Medicaid benefits in the total amount of $334,178.12.
Elizabeth’s parents filed suit on behalf of themselves and Elizabeth on July 17, 1991, against Kirkendall for medical malpractice. The trial commenced on November 6, 1995. During the trial, Elizabeth presented evidence that she had suffered permanent brain damage during the birth process. Kirkendall presented evidence that genetics and various congenital anomalies were the cause of Elizabeth’s condition. Elizabeth did not submit a claim for or any evidence of past medical expenses associated with her condition.
On the last day of trial, prior to the jury’s deliberations, Elizabeth and Kirkendall entered into a “high-low” settlement agreement. Pursuant to this agreement, Elizabeth could receive a maximum of $2,000,000 and a minimum of $500,000. The trial of this action ended on November 17, 1995 with a verdict for Elizabeth itemized as follows:[4]
Future lost wages/lost earning capacity: $ 800,000
Pain and suffering:
Past: 100,000
Future: 500.000
Future medical bills and expenses:$5,500,000
The Division was not notified of the pending suit at any time prior to judgment being entered. On November 20,1995, Elizabeth’s counsel received notice via facsimile that the Division was asserting a lien to recover all Medicaid benefits paid on Elizabeth’s behalf.
DISCUSSION
This case presents an issue not yet addressed by the courts within the Commonwealth. The parties have asked the court to determine whether a statutory lien to recoup Medicaid benefits is applicable to damages awarded by a jury when the components of the jury’s award do not include past medical expenses.
Medicaid benefits were provided to Elizabeth under a joint federal-state program whose purpose is to pay for medical care to indigent aged, blind, and disabled persons and indigent families with dependent children. 42 U.S.C. §1396 (1995). In furtherance of that purpose, the federal government requires any state which chooses, as the Commonwealth has, to participate in the Medicaid program, to “take all reasonable measures to ascertain the legal liability of third parties (including health insurers) to pay for care and services under the plan.” 42 U.S.C. §1396a(a)(25)(A).
*680 I.Applicable Law
In order to fulfill its duly to pursue Medicaid reimbursement, the Commonwealth enacted a statutory scheme through which the funds obtained by Medicaid benefit recipients from third parties would be subject to a lien. See Harlow v. Chin, 405 Mass. 697, 711 (1989). The statutes, G.L.c. 18, §5G, and, mostrecently, G.L.c. 118E, §22,[5] further “the ultimate goal of Medicaid — that the program ‘be the payor of last resort.’ ” Shweiri. v. Commonwealth, 416 Mass. 385, 387 (1993), quoting S. Rep. No. 146, 99th Cong., 2d Sess. at 312 (1986).
The Division and Elizabeth disagree as to the proper interpretation of the statutory provision at issue, G.L.c. 118E, §22. Elizabeth urges the court to hold that the lien should be discharged because no portion of the award included past medical expenses. Therefore, Elizabeth contends, the payment from the liability insurer does not fall within the reach of the statutory lien. In the alternative, Elizabeth asserts that, even if the lien is maintained, the amount of the lien should only include the benefits provided to pay for medical expenses for the injuries caused by Kirkendall’s malpractice. In opposition to Elizabeth’s motion, the Division contends that the lien is enforceable despite the lack of a past medical expenses component of the judgment and the lien should equal the full amount of the benefits provided, whether or not the expenses were connected with injuries directly caused by Kirkendall’s malpractice.[6]
II.Absence of Past Medical Expenses in Jury Award as Affecting Applicability of the Lien Provision
Under the pre-1995 version of G.L.c. 118E, §22, which is applicable to this case due to its creation of substantive rights on Elizabeth’s part,[7] a lien is established in favor of the Division “(w]hen any claimant receives payment from a liability . . . insurer or any other third party.” Neither party disputes that Elizabeth is a claimant or that the money at issue came from a liability insurer or eligible third party.[8]
The issue is whether the jury’s award, because it makes no provision for past medical expenses, is a “payment” sufficient to trigger the lien. When a statute does not define a term, the court will look to the plain meaning of those terms in deciding its applicability. Henry v. Board of Appeals of Dunstable, 418 Mass. 841, 843 (1994). Payment is defined as “a delivery of money or its equivalent in either specific property or services by one person from whom it is due to another person to whom it is due.” Black’s Law Dictionary 1016 (rev. 5th ed. 1979).
The receipt of money from Kirkendall, via his liability insurer, certainly falls into the plain and ordinary meaning of a payment. Nationwide Mutual Ins. v. Commissioner of Insurance, 397 Mass. 416, 420 (1986). The legislature declined to define or restrict the types of payments that would activate G.L.c. 118E, §22, to “payments for past medical expenses” or “payments for benefits already received.” Rather than limit the applicability, the legislature sought to include all payments from third parties. See Hill v. State of Iowa Dept. of Human Services, 493 N.W.2d 803, 807 (Iowa 1992). There is no indication that the statute was meant to be limited to those circumstances involving payments made with specific reference to medical care or expenses received or incurred. See Shweiri, 416 Mass. at 389 (indicating that claimant’s receipt of Medicaid benefits results in a lien “on any amounts received ... from an insurer or third party”) (emphasis added). As the payment is being made by a third party that is expressly included within the statute, the lien of the Division is effective and the remaining issues surround the amount of the lien.
III.Determination of the Amount of the Division’s Lien
In order to determine the amount of the lien which the Division holds in connection with Elizabeth’s recovery from Kirkendall, the court must again examine the statute. Under the pre-1995 version of G.L.c. 118E, §22, a party receiving Medicaid benefits who later receives payment from third parly, such as a liability insurer, must “repay to the division an amount equal to the benefits provided... only to the extent that such benefits were provided as a result of the property damage, accident, illness, injury or other loss suffered by the claimant.” Therefore, the ultimate question is to what degree the Medicaid benefits Elizabeth received were “provided as a result” of Kirkendall’s malpractice.
As indicated above, Elizabeth urges the court to require the Division to make a showing as to which benefits were provided for the direct treatment of Elizabeth’s injuries which were caused by the malpractice. There is no dispute that Elizabeth suffered from a diaphragmatic hernia at birth, a condition which is sometimes found in children who are genetically brain damaged and which was not caused by Kirkendall’s malpractice. There is some question as to whether all of Elizabeth’s brain damage was the result of Kirkendall’s negligent actions. Elizabeth contends that any lien imposed upon her jury award should include only the medical costs for those injuries that were caused by KfrkendaH’s malpractice. According to Elizabeth, this would ensure that the lien included only those amounts expended to treat the brain damage directly caused by Kirkendall’s negligence.[9]
The intended meaning of the applicable statute is not easily discerned without considering the purpose of the Medicaid program and the amendment of the state provision. The court recognizes that the federal government requires that “other available resources must be used before Medicaid pays for the care of an individual enrolled in the Medicaid program.” S.Rep. No. 146, 99th Cong., 2d Sess. at 312 (1986) (emphasis added). This prompted the requirement that the state take reasonable steps to seek out liable third parties to bear the burden of a Medicaid recipient’s medical expenses. 42 U.S.C. §1396a(a)(25)(A). Furthermore, *681 the court looks to the statute as it is currently codified for an indication of what the legislature intended when it first adopted the procedure for a statutory lien to recover Medicaid benefits. The 1995 amendment, which has no effect upon the legal rights of the parties in this case, may be considered to discover legislative intention. Hurle's Case, 217 Mass. 223, 226 (1914); Graci v. Damon, 6 Mass.App.Ct. 160, 170 (1978). In its current form, G.L.c. 118E, §22 requires the claimant to “repay . . . the (D)ivision the total of all public assistance, both financial and medical,” whenever the claimant receives payment from a third party who is liable for the claimant’s injuries. This indicates that the legislature intended the Division to recover all Medicaid benefits advanced — not merely those linked to a particular injury or condition.
The 1995 amendment codifies a sensible and equitable approach to Medicaid reimbursement. Under the 1995 amendment, a claimant who is already receiving Medicaid benefits is treated differently from a claimant who receives benefits solely as a result of the injury and damage at issue. When already receiving Medicaid or other benefits, a claimant is only liable to the Division for the total “medical assistance required and any increase in financial assistance that occurred as a result of the accident, illness, injury, or other incident.”[10] G.L.c. 118E, §22. Requiring a claimant to pay back the sum total of all medical and financial benefits that the claimant has received over what might be a period of many years would be inequitable when those benefits were entirely unrelated to the incident for which the third party is liable. Additional support for the court’s interpretation of the statute at issue is found in the dual approach the statute now takes in connection with those benefits advanced to a party already receiving Medicaid.
In this case, Elizabeth would not have received Medicaid benefits were it not for the severe injuries the jury found were caused by Kirkendall’s malpractice.[11] The fact that additional Medicaid benefits may have been provided as a result of other medical conditions present at birth not caused by Kirkendall’s negligence does not excuse Elizabeth’s liability in the form of a statutory lien for the sum total of all Medicaid benefits.
The purposes of the state and federal statutes involved are clearly served by this conclusion. “The Federal and State governments share the financial obligations of the Medicaid program; in Massachusetts, each pays fifty per cent of the plans’ obligations . . . [B]oth the Federal and State governments benefit if other sources are available to pay expenses that Medicaid would otherwise pay.” Shweiri, 416 Mass. at 391. The Medicaid program is intended to be the payor of last resort. Elizabeth received Medicaid benefits solely because of the unfortunate medical condition which befell her. Although she was not at fault for her injuries, the availability of funds to pay for her past medical expenses, whether the funds were so designated or not, eliminates the need for the Division to have expended its limited resources on her medical expenses. The Division may recover, by means of the statutory lien, the sum total of Medicaid benefits provided to Elizabeth. While Elizabeth may be correct that the lien will consume a portion of the funds intended to pay for Elizabeth’s future medical expenses, the Division and the Medicaid program will continue to make its funds available to Elizabeth in the future through its role as payor of last resort.
ORDER
For the foregoing reasons, the motion of Elizabeth to discharge the lien of the Division of Medical Assistance is DENIED.

The jury verdict also included an award for Elizabeth’s parents’ loss of consortium in the amount of $350,000.00 ($175,000 each).

Subsequent to a 1993 amendment, Medicaid liens would occur under the auspices of G.L.c. 118E, §22 instead of G.L.c. 18, §5G. The new provision essentially mirrored the statutory scheme in G.L.c. 18, §5G as it then existed. General laws, chapter 18, §5G now applies to situations involving governmental assistance other than Medicaid such as Welfare and Aid to Families with Dependent Children, while G.L.c. 118E, §22 applies solely to the recovery of Medicaid benefits.
Prior to 1995, during which time Elizabeth’s cause of action accrued and was filed with the court, G.L.c. 118E, §22, read in part as follows:
“When any claimant receives payment from a liability or worker’s compensation insurer or other third party, the claimant shall repay to the division an amount equal to the benefits provided under any medical assistance program administered by the division to or on the behalf of the claimant, the claimant’s spouse or children, or any individual whom the claimant is required by law to support, but- only to the extent that such benefits were provided as a result of the property damage, accident, illness, injury or other loss suffered by the claimant. . .”
Both provisions were rewritten effective July 1, 1995. The statutes’ new phrasing remain essentially identical to each other. General laws chapter 118E, §22, currently reads in part as follows:
“When any claimant receives payment from a liability or worker’s compensation insurer or any other third party, the claimant shall repay to the department of transitional assistance and the division the total of all public assistance benefits, both financial and medical, provided by said agencies on or after the date of loss to or on behalf of the claimant, the claimant’s spouse or children, or any individual whom the claimant is required by law to support; provided, however, that on the date of the loss the claimant was already eligible for medical assistance benefits, the claimant shall repay only medical assistance required and any increase in financial assistance that occurred as a result of the accident, illness, injuiy or other incident.”

The Division also contends that the lien is effective under a valid contract or because of attempts by Elizabeth to evade the lien. The court need not reach these arguments and expresses no position on them because the statute applicable to this case provides a sufficient basis for the decision.

In Massachusetts, “[t]he general rule of interpretation is that all statutes are prospective in their operation, unless an *682 intention that they shall be retrospective appears by necessary implication from their words, context or objects when considered in the light of the subject matter, the pre-existing state of the law and the effect upon existent rights, remedies and obligations. Doubtless all legislation commonly looks to the future, not the past, and has no retroactive effect unless such effect manifestly is required by unequivocal terms. It is only statutes regulating practice, procedure and evidence, in short, those relating to remedies and not affecting substantive rights, that commonly are treated as operating retroactively, and as applying to pending actions or causes of action.” Murphy v. Planning Board of Norwell, 5 Mass.App.Ct. 393, 396 (1977). As the 1995 version of the statute could impact the nature and extent of Elizabeth’s obligation to reimburse the Division, the statute shall not be applied retroactively. See G.L.c. 118E, §22 (1995). However, as indicated infra, the 1995 statute may be examined to determine the intent behind the pre-1995 statute.

The pre-1995 statute did not define a third party. In the Massachusetts regulations, ‘Third-Party liability” is defined as “the legal obligation of any person, company, or agency to pay all or part of an individual’s medical expenses.” 106 C.M.R. §501.500. Federal regulations define third party as “any individual, entity or program that is or may be liable to pay all or part of the expenditures for medical assistance furnished under the State plan.” 42 C.F.R. §433.136. The 1995 statute defines a “Third party” as “any individual, agency, program, entity or insurer, that is or may be liable to pay monies on account of the claimant’s loss.” G.L.c. 118E, §22 (1995).

Although not essential to the court’s decision on this issue, it should be noted that Elizabeth admitted in oral argument that the difficulty in demonstrating which injuries and past medical expenses were directly caused by Kirkendall’s malpractice was a primary reason for not including past medical costs as a requested element of damages. It is unrealistic to expect the Division to be in a better position to make such a showing when attempting to recoup Medicaid benefits as it is required to do by both federal and state law.

For example, an individual who has received welfare benefits for four years prior to a malpractice injury will not be subject to a lien for the full amount if the individual is able to recover from a third party for the incident of malpractice. Rather, the individual would only be subject to a lien for the medical expenses resulting from the malpractice injury. Under that type of situation, the existence of pre-injury benefits allows for a ready determination of the benefits expended for the later malpractice injury.

The evidence at trial was to the effect that the diaphragmatic hernia was operated upon successfully shortly after Elizabeth’s birth.