ELIZABETH WHELAN & others[1] vs. DIVISION OF MEDICAL
ASSISTANCE.

No. 96-P-1083.

Worcester. December 12, 1997. - April 30, 1998.

Present: BROWN, DREBEN, & KASS, JJ.

*Medicaid. Lien. Medical Malpractice,* Damages.

Discussion of G. L. c. 18, § 5G, and G. L. c. 118E, § 22, as amended by St.
1995, c. 38, § 131, the Massachusetts Medicaid recovery statutes.
[665-666]
Under the Massachusetts Medicaid recovery statutes, G. L. c. 18, § 5G, and
G. L. c. 118E, § 22, the Division of Medical Assistance properly could as-
sert a statutory lien for past Medicaid payments against settlement proceeds
recovered by a benefit recipient in a third-party negligence action, regard-
less of whether such proceeds were characterized as compensation for
future, rather than past, damages [666-667]; further, the placement of such
proceeds in a "supplemental needs trust" did not exempt them from the
statutory lien [667].
A Medicaid benefit recipient failed to demonstrate that she was entitled to
reduction of a lien asserted by the Division of Medical Assistance under
the Massachusetts Medicaid recovery statutes, but the recipient was entitled
to a hearing to test the correctness of the lien figure. [667-668]

CIVIL ACTION commenced in the Superior Court Department on
July 17, 1991.

The case was tried before *Raymond J. Brassard,* J.

*Elizabeth N. Mulvey (Andrew C. Meyer, Jr.,* with her) for the
plaintiffs.

*Salvatore M. Giorlandino,* Assistant Attorney General, for the
defendant.

KASS, J. Elizabeth Whelan settled a medical malpractice claim

---

[1]Deborah Whelan, mother of Elizabeth Whelan, individually and as next
friend; Peter Whelan. Our references to Elizabeth are, of course, metaphorical.
She, herself, has not acted or argued positions. Her parents have acted on her
behalf, and her lawyers have argued the positions we discuss.

against her mother's obstetrician for $2,000,000.[2] Over seven years,[3] beginning soon after Elizabeth's birth, the Commonwealth, through the Division of Medical Assistance (the division), had provided Medicaid benefits for her care. Upon receiving notice through a newspaper story of the judgment Elizabeth had obtained, the division filed a lien of $334,178.12 against the settlement proceeds. Elizabeth moved to discharge the Commonwealth's lien, and the Superior Court judge who presided over the underlying malpractice trial denied that motion. This appeal followed. Elizabeth resists the lien, asserted under G. L. c. 18, § 5G, and a superseding statute enacted in 1993, G. L. 118E, § 22, on the ground that her action against the obstetrician claimed compensation for damages that would accrue *after* the time during which the division had made Medicaid payments on Elizabeth's behalf.[4] The trial judge ruled that the Commonwealth, under the statutory scheme, is entitled to its lien. On that central question, we affirm his order. We make a minor modification to allow for inquiry into whether the figure of $334,178.12 is accurate.

The theory of Elizabeth's case against the obstetrician was that his negligence caused her to suffer brain damage at birth and possibly in utero.[5] The obstetrician's defense was that Elizabeth's deficits were congenital in origin. Elizabeth had, indeed, been born with a diaphragmatic hernia that all parties agree was a congenital anomaly and of a kind sometimes associated with brain anomalies. The hernia was surgically repaired.

Under the governing statutes, G. L. c. 18, § 5G, and G. L. c. 118E, § 22, a Medicaid beneficiary is required to notify the

---

[2]The malpractice case was tried to a jury in Superior Court. On the last day of trial, before the jury began deliberations, Elizabeth and the obstetrician entered into a "high-low" settlement agreement that Elizabeth would recover a minimum of $500,000 and a maximum of $2,000,000. The jury returned a verdict in Elizabeth's favor of $6,900,000, causing the ceiling of the "high-low" settlement, $2,000,000, to be applicable. Elizabeth's parents each obtained a loss of consortium judgment in the amount of $175,000. Those judgments are not involved in this appeal.

[3]More precisely, six years and ten months, beginning February, 1989, through November 20, 1995.

[4]Of the damages that the jury awarded, $100,000 were for past pain and suffering. The largest component of the verdict was $5,500,000 for future medical expenses. In addition, the jury awarded $800,000 for future lost wages and lost earning capacity and $500,000 for future pain and suffering.

[5]The record on appeal contains no clinical information.

division[6] in writing of the commencement of an action against a third party to recover damages arising out of the injury that called forth Medicaid benefits. Elizabeth did not so notify the Commonwealth.

1. *The statutory framework.* Any State that chooses to participate in the Medicaid program must "take all reasonable measures to ascertain the legal liability of third parties . . . to pay for care and services available under the plan." 42 U.S.C. § 1396a(a)(25)(A) & (B) (1994). See *Harlow* v. *Chin*, 405 Mass. 697, 720-711 (1989); *Shweiri* v. *Commonwealth*, 416 Mass. 385, 388-389 (1993). The response of Massachusetts to that requirement first appeared in G. L. c. 18, § 5G, inserted by St. 1977, c. 363A, § 52. Until 1993, the dispensing agent for Medicaid payments and for recovery under § 5G was the Department of Public Welfare.[7] Statutes 1993, c. 161, § 1, established the Division of Medical Assistance and conferred on that new agency the responsibility for running Medicaid. Provisions for reimbursement of Medicaid payments from recoveries having their source in third-party liability, analogous to the provisions of § 5G, appeared in § 22 of a new c. 118E, inserted by St. 1993, c. 161, § 17.

When Elizabeth began receiving Medicaid benefits in 1989, G. L. c. 18, § 5G, was the applicable statute. On July 16, 1993, G. L. c. 118E, § 22, became applicable. Those two statutes are the same in design and substantially similar in language. By the time of the verdict, the settlement, and the assertion of its lien by the division in November, 1995, the Legislature had further amended § 5G and § 22 (see St. 1995, c. 38, §§ 33 and 131). It is enough, for the moment, to observe that the 1995 amendments both simplify and refine some of the provisions, and do not alter the reciprocal rights of Elizabeth Whelan and the division. Under all versions of the statute, the division is entitled to recover from a third party liable to a Medicaid beneficiary all Medicaid disbursements to that beneficiary to the extent the Medicaid benefits were provided as a result of an injury that gave rise to the third-party liability. To illustrate, if a person receives Medicaid assistance in connection with a broken leg, that injury having been caused by the negligence of a tortfeasor, then the Commonwealth has a claim, to the extent of its

---

[6]In some circumstances, a notice should be given as well to the Department of Transitional Assistance.

[7]Renamed by St. 1995, c. 5, § 8, the Department of Transitional Assistance.

Medicaid outlays, against the recovery of the injured party from the tortfeasor. Pertinent provisions of § 5G, in the form applicable in 1989, § 22, as enacted in 1993, and § 22, as amended in 1995, are set out in an Appendix to this opinion.

2. *Extent of Commonwealth's lien.* All versions of the statutes also confer on the Commonwealth a lien against proceeds from a third party for Medicaid benefits paid in connection with the injury for which the third party is liable. Elizabeth, as we have noted, contends that her settlement with the obstetrician is beyond the reach of the statutory lien because the damages she recovered did not include past medical expenses. The Massachusetts Medicaid recovery statutes, however, do not carve out any past-future damages distinction. They provide for recovery, in the 1982 and 1993 statutes, of an "amount equal to the benefits provided . . . to the extent that such benefits were provided as a result of the . . . injury . . . suffered by the claimant." The 1995 statutory language is, if anything, more inclusive. It provides for repayment to the Commonwealth of "the total of all public assistance benefits, both financial and medical, provided . . . to or on behalf of the claimant . . . ." The lien is to operate on "any amounts received by the claimant from the insurer or third party." *Shweiri* v. *Commonwealth,* 416 Mass. at 389.

The entire design of the Federal-State statutory apparatus is to replenish Medicaid funds when a benefit recipient recovers compensation for the injury from the person who caused it. Elizabeth's view that prospective damages limit reimbursement for earlier Medicaid payments allows easy subversion of the statutory purpose. All a lawyer need do, as here, is ignore previous loss and demand of the third party only prospective loss. That, as our English brethren would say, is too clever by half. Elizabeth's position is the more untenable because she failed to comply with the statutory requirement of notifying the division that she was bringing a third-party negligence action. Had she done so, the division could have intervened and made demand in the malpractice case for past as well as anticipated damages.

Three cases from other States from which Elizabeth seeks support are based either on different statutory language or no applicable statute at all. See and contrast *Department of Human Serv.* v. *Brooks,* 412 N.W.2d 613, 616 (Iowa 1987); *In re Estate of Jackson,* 79 N.J. 517, 527-528 (1979); *Baker* v. *Sterling,* 39 N.Y.2d 397, 402-406 (1976). Elizabeth recognized the Com-

monwealth's call on potential recovery from third parties by subscribing, when applying for Medicaid benefits, to the following:

> "If you are applying for or receiving Medical Assistance because of an accident at your job, an auto accident, or any other incident for which you will sue the person responsible for your injury, then by signing this application, you promise to repay that medical assistance out of any money which you receive."

On appeal, Elizabeth for the first time claims exemption for the settlement proceeds because they have been placed in a Supplemental Needs Trust ("SNT"). Parties may not bring before an appellate court an issue that they did not present to the trial court. *Trustees of Stigmatine Fathers, Inc.* v. *Secretary of Admin. & Fin.*, 369 Mass. 562, 565 (1976). *Aronoff* v. *Board of Registration in Medicine*, 420 Mass. 830, 834 n.5 (1995). *Still* v. *Commissioner of the Dept. of Employment & Training*, 39 Mass. App. Ct. 502, 503-504 n.3 (1995), *S.C.*, 423 Mass. 805, 808 n.3 (1996).

Prescinding from the further difficulties that there is no record support for the existence of an SNT and there is no explanation as to how the funds found their way into such a trust in the face of the division's lien, an SNT would not provide the Whelans with a refuge. An SNT is a trust set up under statutory authorization for a disabled person to pay for that person's necessary expenses not covered by public assistance. See 42 U.S.C. § 1396p(d)(4)(A) (1994). It has to do with the determination of an individual's Medicaid eligibility and does not negate the recovery provisions of 42 U.S.C. § 1396a(a)(25)(A). The Massachusetts statutes, which we have discussed, enacted to comply with the directive of § 1396a(a)(25)(A), contain no exemption for SNT assets. Contrast *Matter of Gibson*, 162 Misc. 2d 530, 535-536 (N.Y. 1994).

3. *Amount of the Commonwealth's lien.* Elizabeth argues that, to the extent the division has a lien, there should be subtracted from the total of Medicaid payments those that are attributable to needs of hers not traceable to the obstetrician's negligence. To support this position, Elizabeth posits congenital brain defects that she would have had in any event, pointing to the diaphragmatic hernia as an indicator of such defects. Yet the

battleground of the malpractice action had been whether the origin of Elizabeth's brain defect was genetic or the result of medical malpractice. Elizabeth, as plaintiff in that case, urged that the cause was malpractice, and the jury so found. It is somewhat unsettling to have the plaintiff change ground in this fashion from one phase of the litigation to the next to avoid reimbursement to the Commonwealth. See the discussion of judicial estoppel in *Blanchette* v. *School Comm. of Westwood*, 427 Mass. 176, 184-185 (1998). More to the point, Elizabeth has pointed to no plausible way by which she could show that her brain deficit requiring medical assistance was divisible.[8] The possibility of such division could at least have been explored had Elizabeth given the Commonwealth the required notice of the malpractice action. Principles of fairness and careful use of limited judicial resources prohibit a further round of litigation to resolve a question that should have been resolved in the first round. Cf. *Bagley* v. *Moxley*, 407 Mass. 633, 636 (1990); *Bendetson* v. *Building Inspector of Revere*, 36 Mass. App. Ct. 615, 618-619, 621 (1994).

At trial, Elizabeth requested and was denied a hearing to determine whether the amount claimed by the Commonwealth, i.e., $334,178.12, had in fact been expended over the six-year period on medical assistance to Elizabeth in connection, broadly, with her brain deficit. Elizabeth is entitled to a hearing to test the correctness of the lien figure. In such a hearing, however, Elizabeth may not relitigate what caused her brain deficit, and the division's records shall be entitled to a presumption of regularity. *Newburyport* v. *Thurlow*, 324 Mass. 40, 44 (1949). Cf. *Planning Bd. of Springfield* v. *Board of Appeals of Springfield*, 338 Mass. 160, 163 (1958). Should Elizabeth choose to dispute the validity of any expenditure, it will be her burden to rebut the presumption of regularity. *Ibid.*[9]

4. *Attorney's fees.* Elizabeth argues that the division should be required to pay a share of the attorney's fees incurred in connection with obtaining the settlement and payment under it.

---

[8]The cost of repairing the diaphragmatic hernia can perhaps be broken out as a cost not recovered in the malpractice action. In relation to the size of the figures under discussion, that amount may not be worth further contention.

[9]Although there is some ambiguity to the sentence, in par. 14 of a stipulation filed January 18, 1996, Elizabeth may have conceded the accuracy of the Commonwealth's total of $334,178.12 paid on behalf of Elizabeth "as a result of her injuries."

Such a claim is not discordant with principles governing the allocation of fees when a party is subrogated to the rights of a claimant. See *General Exch. Ins. Corp.* v. *Driscoll*, 315 Mass. 360, 366 (1944). Once again, however, Elizabeth is raising the point for the first time on appeal, and we decline to consider it. Had Elizabeth notified the Commonwealth of the third-party action as the statute required and had the Commonwealth sat back to see what Elizabeth could reel in from the action, there might have been room for discussion that a request for apportionment of legal fees between Elizabeth and the division should be considered on equitable grounds, even though not raised before the case reached the appellate level. As the case lies, however, we do not think there is an occasion for such late consideration.

5. *Conclusion.* The order of the Superior Court is affirmed insofar as it confirms the validity of the division's lien against the settlement fund. Elizabeth Whelan, if she so desires, may have a hearing, conformably with the criteria set forth in this opinion, to establish the accuracy of the lien figure.

*So ordered.*

APPENDIX.

1. General Laws c. 18, § 5G, inserted by St. 1977, c. 363A, § 52, and as amended by St. 1982, c. 430, § 1:

> "When any claimant receives payment from . . . any . . . third party, the claimant shall repay to the department an amount equal to the benefits provided under any program of assistance administered by the department . . . , but only to the extent that such benefits were provided as a result of the property damage, accident, illness, injury or other loss suffered by the claimant; and the application for and receipt of such benefits shall, after notification has been given to the third party, operate as a lien to secure repayment against monies which may be provided by . . . any . . . third party up to the amount of such benefits . . . .

> "A claimant shall notify the department in writing upon commencement by him of a civil action . . . to establish the liability of any third person . . . by reason of the . . . injury or disability referred to in the preceding paragraph."

2. General Laws c. 118E, § 22, inserted by St. 1993, c. 161, § 17:

> "When any claimant receives payment from . . . any . . . third party, the claimant shall repay to the division an amount equal to the benefits provided under any medical assistance program administered by the division to or on behalf of the claimant, . . . but only to the extent that such benefits were provided as a result of . . . injury or

other loss suffered by the claimant; and the application for and receipt of such benefits shall, after notification has been given to the third party, operate as a lien to secure repayment against monies which may be provided by . . . any . . . third party up to the amount of such benefits. . . .

"If benefits are provided under any medical assistance program administered by the division as a result of . . . injury or loss for which a third party may be liable, the division shall require the person receiving such benefits to assign to the commonwealth an amount equal to the benefits so provided from the proceeds of any such claim against the third party.

"A claimant shall notify the division in writing upon commencement by him or her of a civil action or other proceeding to establish the liability of any third party or to collect monies . . . from any other source by reason of the accident, injury or disability referred to in the preceding paragraph."

3. General Laws c. 118E, § 22, as amended by St. 1995, c. 38, § 131:

"When any claimant receives payment from . . . any . . . third party, the claimant shall repay to the department of transitional assistance and the division the total of all public assistance benefits, both financial and medical, provided by said agencies on or after the date of the loss to or on behalf of the claimant . . . ; provided, however, that on the date of the loss the claimant was already eligible for medical assistance benefits, the claimant shall repay only medical assistance required and any increase in financial assistance that occurred as a result of the accident, illness, injury, or other incident.

"The application for and receipt of benefits recoverable under this section shall, after notice to the third party, operate as a lien to secure repayment against monies which may be provided by said third party up to the amount of such benefits . . . .

"Any person receiving public assistance benefits recoverable under this section shall assign to the commonwealth an amount equal to the benefits so provided from the proceeds of any such claim against the third party.

"A claimant shall, within ten calendar days, notify the division in writing upon commencement of a civil action or other proceeding to establish the liability of any third party or to collect monies . . . from any . . . third party or source."