New England Wooden Ware Corp. *v.* Commissioner of the Dept. of Employment and Training.

NEW ENGLAND WOODEN WARE CORPORATION *vs.*
COMMISSIONER OF THE DEPARTMENT OF EMPLOYMENT AND
TRAINING & another.[1]

No. 03-P-106.

Worcester. February 4, 2004. - July 20, 2004.

Present: DOERFER, COHEN, & MILLS, JJ.

*Department of Employment and Training. Employment Security,* Eligibility for benefits.

This court concluded that sufficient evidence existed in the record before a board of review of the defendant Department of Employment and Training to conclude that the plaintiff employer's absenteeism policy was neither uniform on its face, in that it provided the plaintiff with the discretion to overlook its strict requirements [534-535], nor uniformly enforced, given that an employee's supervisor failed to discipline him when the employee's partial attendance should have been treated as an occurrence of absenteeism [535-536].

CIVIL ACTION commenced in the Gardner Division of the District Court Department on November 29, 2001.

The case was heard by *Patrick A. Fox*, J.

*Marcia L. Elliott (John M. Flick* with her) for the plaintiff.

*Susan Paulson*, Assistant Attorney General, for Commissioner of the Department of Employment & Training.

DOERFER, J. The plaintiff-employer, New England Wooden Ware Corporation (NEWW), appeals from a judgment of a District Court judge affirming a decision of the board of review (board) of the Department of Employment and Training (DET) which granted unemployment benefits to NEWW's employee Joseph W. Callahan, Jr. The appeal raises the issue whether there was substantial evidence to support the finding of the board that Callahan was entitled to unemployment benefits

---

[1]Joseph W. Callahan, Jr.

because, even though he violated NEWW's policy designed to curb "excessive absenteeism,"[2] the policy was not uniformly enforced. We conclude that the District Court was correct in its ruling in favor of the board both on this issue and on the correlative issue that the board made no error of law in its interpretation of the relevant statutory language.

Pursuant to G. L. c. 151A, § 25(*e*)(2), as amended through St. 1992, c. 26, § 19, Callahan would be disqualified from receiving unemployment benefits if he was discharged for "a knowing violation of a reasonable and uniformly enforced rule or policy of the employer." Since there is no dispute that Callahan knowingly violated a policy of NEWW and there is no issue before us as to whether the policy was reasonable,[3] the only issue before us on appeal is whether the employee knowingly violated a uniformly enforced rule or policy, a matter on which NEWW has the burden of proof. See *Still* v. *Commissioner of the Dept. of Employment & Training*, 39 Mass. App. Ct. 502, 508 (1995), *S.C.*, 423 Mass. 805 (1996).

NEWW's policy on absenteeism and tardiness in effect at the relevant time was expressed in a written policy enforced by "Shop Rule [No.] 18." Pursuant to this policy, an employee's unexcused absences and tardiness triggered progressive disciplinary action. In relevant part, when an employee had what the written policy defined as excessive absenteeism,[4] Shop Rule No. 18 called for a written warning to be sent after the first and second occasions. On the third occasion of excessive absenteeism within a twelve-month period, the employee would

---

[2]The written policy on absenteeism included tardiness.

[3]Upon review, the board found that the policy was unreasonable. The District Court did not address this issue, as it appears that NEWW only argued that the policy was uniform. We do not address it either since "[p]arties may not bring before an appellate court an issue that they did not present to the trial court." *Whelan* v. *Division of Med. Assistance*, 44 Mass. App. Ct. 663, 667 (1998). In any event, even if the policy was reasonable, it was not uniformly enforced.

[4]Absences considered excessive included "[a]bsences in excess of one . . . occurrence in any thirty . . . day period," as well as "two . . . occurrences of absenteeism in any sixty . . . day period." In addition, if the employee left early or arrived more than one hour late within a thirty-day period, such "partial attendance" was "considered equivalent to one . . . occurrence of absenteeism." There were additional definitions not relevant here.

be discharged. The written policy further provided the following: "The Company will consider, on a case by case basis, proven illness as an absence which may fall outside the disciplinary procedure of Shop Rule [No.] 18. Senior employees with exemplary, long term records of attendance and performance will not, in all cases, be held to a strict interpretation of this policy. The Company will rule on such excessive absenteeism cases involving senior people, on a case by case basis."

The board concluded that, since the written policy was neither uniform on its face nor uniformly enforced, Callahan did not violate a "uniformly enforced policy" of the employer, and he was entitled to unemployment compensation benefits. "Our function . . . is to determine whether the [board] applied the correct legal principles in [allowing] unemployment compensation benefits to the plaintiff. . . . In addition, we must consider whether the [board]'s findings are supported by substantial evidence." *Quintal* v. *Commissioner of the Dept. of Employment & Training*, 418 Mass. 855, 858-859 (1994). We afford deference to the board's conclusion. *Boston Bicycle Couriers, Inc.* v. *Deputy Dir. of the Div. of Employment & Training*, 56 Mass. App. Ct. 473, 478 (2002).

1. *Undefined terms in the written policy.* There is no error in the board's conclusion that since the written policy provided the employer with the discretion to overlook its strict requirements, it was nonuniform on its face. In particular, the board found the policy provided exceptions for senior employees without defining the term "senior employee" and excused "proven illness" on an ad hoc basis. Contrary to NEWW's assertions, the board did not misinterpret the statute in finding that the written policy could not be enforced uniformly. Although we can conceive of an absenteeism policy that uniformly distinguishes between junior and senior employees, here the term "senior employee" remained undefined, thus creating confusion as to who might qualify for the policy's exception. Further, the case by case exception for proven illnesses allowed the employer to enforce the written policy in a nonuniform manner. The policy contained

neither criteria nor guidelines by which the employees could gauge whether they fell within one of its exceptions.[5]

2. *Uneven application of the written policy in practice.* The board also concluded that the written policy was nonuniformly enforced in practice because Callahan's shift supervisor failed to discipline him for two days when Callahan's partial attendance should have been treated as an occurrence of absenteeism. There was no error. Callahan was discharged on September 20, 1999, because after he had received two prior written warnings, he had been absent on both August 27, 1999, and September 18, 1999. However, he also had partial attendance days on September 8, 1999, and on September 13, 1999. Under the written policy, Callahan's two partial attendance days constituted an occurrence of absenteeism and, considered with his absence on August 27, 1999, he should have been discharged on September 13, 1999. However, these partial absences were overlooked even though they were violations of the written policy.[6]

NEWW argues that, because Callahan benefitted from the company's failure to discharge him, we should overlook the nonuniform application of the policy. We find no support in the statute or cases for this proposition. See G. L. c. 151A, § 25(*e*)(2). See also *White* v. *Boston*, 428 Mass. 250, 253 (1998) (court should follow clear language of statute). Instead, it is conceivable that this "benefit" led Callahan to believe that he would not lose his job for failing to adhere to the attendance policy's draconian requirements. Failure to enforce a policy uniformly, whether to the employee's benefit or detriment, still influences the employee's belief regarding the consequences of his actions. See *Still* v. *Commissioner of Employment & Training*, 423 Mass. at 813.

[5]NEWW's citation to *Matthews* v. *Ocean Spray Cranberries, Inc.*, 426 Mass. 122 (1997), is unpersuasive. *Matthews* dealt with issues of employment discrimination in violation of G. L. c. 151B, § 4(1). *Id.* at 123.

[6]The examiner's failure to make findings regarding the discharge of two nonsenior employees is not fatal to the board's decision that the policy was not uniformly enforced. First, the evidence merely shows that two employees were discharged following a third offense though, for one of the other employees, two partial occurrences were included in the calculation. These discharges are not dispositive on how the policy was enforced. Second, the policy was not uniformly enforced with respect to Callahan.

Accordingly, there was substantial evidence in the record for the board to conclude that the policy was neither uniform on its face nor uniformly enforced. See *Boguszewski* v. *Commissioner of the Dept. of Employment & Training*, 410 Mass. 337, 345 (1991).

The judgment of the District Court affirming the decision of the DET board of review allowing Callahan's application for unemployment benefits is affirmed.

*So ordered.*